West Penn Power Company, Appellant, *v.*
Pennsylvania Public Utility
Commission.

26

Argued June 12, 1962.   Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*James F. Boyer,* with him *Charles L. McCormick,*
for appellant.

*Anthony L. Marino,* Assistant Counsel, with him
*Joseph I. Lewis,* Chief Counsel, for Pennsylvania Pub-
lic Utility Commission, appellee.

*Adolph L. Zeman,* with him *Robert L. Zeman,* and *Zeman & Zeman,* for intervening appellee.

OPINION BY WRIGHT, J., September 13, 1962:

On July 11, 1961, the West Penn Power Company applied to the Pennsylvania Public Utility Commission for approval of the exercise of the right of eminent domain in acquiring a right-of-way across property of Earl W. Simmons and Irene H. Simmons, his wife, for the construction, operation and maintenance of an electric transmission line. Testimony was taken at a hearing on September 25, 1961, and oral argument was heard on January 23, 1962. By its order dated March 5, 1962, the Commission denied the application. This appeal by the Company followed, and we permitted the property owners to become intervening appellees.

The question before us involves an interpretation of the Act of May 21, 1921, P. L. 1057, 15 P.S. 1182, which grants to corporations supplying light, heat and power by means of electricity the right to appropriate property for the transmission or distribution thereof, subject to certain limitations. The statutory provision which gives rise to the issue presented by this appeal, reads as follows: "And provided further, That before any such company shall exercise the power conferred by this subsection, the Public Service [Utility] Commission of the Commonwealth of Pennsylvania, upon application of such company, shall have found and determined, after public hearing, that the service to be furnished by said company through the exercise of said power is necessary or proper for the service, accommodation, convenience, or safety of the public".

The intervenors own a farm property of approximately eighty-nine acres in Peters Township, Washington County. The Company presently has in operation a 132 kv transmission line, known as the Windsor-Courtney-Charleroi line, which passes through the

western edge of this property. The Company plans to construct a transmission line from a point on the existing Windsor-Courtney-Charleroi line, a distance of 1.8 miles in an easterly direction, to connect with a proposed new substation to be known as the Peters substation. The Company desires to locate the point of connection on the Simmons property. This would require, not only a right-of-way of 1658 feet through the middle of the farm for the new line, but also a temporary right-of-way of 2022 feet along the present line while an existing steel tower is removed and a new tower erected to accommodate the connection point. The permanent right-of-way, 100 feet in width, will occupy 3.81 acres and traverse 1400 feet of cultivated land and 200 feet of brush and woodland. The temporary right-of-way, of varying width, will occupy 2.32 acres and traverse 350 feet of peach orchard, 800 feet of cultivated land, 450 feet of brush, and 400 feet of farm reservoir.

The Simmons property is operated as a specialized fruit and vegetable farm, intensively cultivated by contours to control erosion, with scientific application of fertilizers to produce high soil fertility, and by an extensive irrigation system. The water for irrigation is supplied from two reservoirs on the Simmons property, and another on a leased farm, by means of a portable pumping unit and by portable 30-foot aluminum pipe sections which can be readily coupled together to provide a system of supply lines and laterals to irrigate areas under cultivation as needed. The testimony discloses that unavoidable breakage of pipe couplings occurs under certain temperature conditions and, in such event, the heavy operating pressure may project water as high as 100 feet into the air and, in some instances, propel sections of pipe to a height of 40 feet. Frank L. Wilson, an expert witness, testified that, if a stream of water or section of pipe would be propelled into the air and touch the 132 kv transmission conductors, any

person in physical contact with the piping of the irrigation system would suffer injury or death by electrical shock. It should be noted that the transmission conductors will be attached to the supporting towers at a heighth of 50 feet from the ground, and that the span length of 700 feet or more between the towers will result in a sag of the transmission conductors to a minimum vertical clearance of 35 feet above the ground.

According to the record the Company surveyed an adjoining property, known as the Patterson farm, and the plan of a proposed right-of-way thereon was discussed with the property owner. However, a price for the right-of-way could not be agreed upon. It appears that the Patterson farm is not under cultivation, but that location of the proposed line on that property would lengthen the line approximately 700 feet and would necessitate the erection of an additional steel tower. The Company's survey supervisor testified that the estimated cost of such relocation was $9,000.00.

The Commission found that the service to be furnished by the new line was necessary and proper in the public interest, and that the Company's proposed acquisition of a portion of the Simmons property was the result of orderly planning designed to provide the most economical and practical route. However, the Commission concluded "that applicant's proposed right-of-way location across the Simmons property will create a situation involving hazard to the public and, in view of the specialized nature of the property owners' farm operation, the selection of the route, as proposed herein by applicant, constitutes an unreasonable disregard of the property owners' rights under the law".

Appellant first contends that, having found that the service to be furnished was necessary and proper in the public interest, the Commission had no alternative other than to approve the route selected. This argu-

ment fails to give full significance to the language of the statute. In *Dickson v. P. S. C.,* 89 Pa. Superior Ct. 126, the applicable legal principles are set forth as follows: "Manifestly, the selection of the route for the lines is a matter for the light company in the first instance and, unless it is shown that it proposes to exercise the powers conferred upon it wantonly, corruptly or capriciously, or that the rights of the land owner have been trifled with, or unreasonably disregarded, the law does not contemplate that the Commission should withhold its approval simply because another route might have been adopted". Similarly in *Wilson v. P. S. C.,* 89 Pa. Superior Ct. 352, we pointed out that the Commission "must necessarily have power to pass upon the question of the proper location of the line, especially if an electric company should act wantonly, arbitrarily or unreasonably in selecting a route". See also *Biddle v. P. S. C.,* 90 Pa. Superior Ct. 570. It is readily apparent that the service to be furnished by a proposed power line might be necessary or proper in the public interest, but that the route selected for the line should so offend the fundamental purposes of the statute as to warrant the withholding of approval by the Commission. Such is the situation in the case at bar.

Appellant's second contention is that the Commission erred in finding that the rights of the property owners had been unreasonably disregarded. This was a factual question for the Commission to determine. Appellant cites *Stone v. Pa. P. U. C.,* 192 Pa. Superior Ct. 573, 162 A. 2d 18; *Laird v. Pa. P. U. C.,* 183 Pa. Superior Ct. 457, 133 A. 2d 579; and *Biddle v. P. S. C.,* supra, 90 Pa. Superior Ct. 570. However, the Commission did not find in those cases, as it did find in the instant case, that the rights of the property owners had been unreasonably disregarded. We have previously set forth the evidence before the Commission. This record

fully supports the finding of the Commission that the selection by appellant of the route constituted an unreasonable disregard of the rights of the property owners. We will not substitute our judgment for that of the Commission unless the order is clearly unreasonable or amounts to a flagrant abuse of discretion. See *Phillips v. Pa. P. U. C.*, 181 Pa. Superior Ct. 625, 124 A. 2d 625; *Willits v. Pa. P. U. C.*, 183 Pa. Superior Ct. 62, 128 A. 2d 105.

Appellant's third and final contention is that the Commission also erred in finding that the proposed right-of-way will create a situation involving hazard to the public. In *Lower Chichester Township v. Pa. P. U. C.*, 180 Pa. Superior Ct. 503, 119 A. 2d 674, we made the following pertinent statement: "The public for whose conveniences, accommodation, safety, and protection the Public Utility Law is concerned does not consist solely of persons served by the utility, but also includes persons generally who may come into contact with the utility's facilities". We cannot agree with appellant's argument that public safety is not involved in the instant case. There is an abundance of testimony in the present record to support the conclusion that persons lawfully using the Simmons property would constantly be exposed to the hazard created by the proposed line. We are of the opinion that such persons are members of the public within the meaning of the statute.

In conclusion, it is our view that, in denying the instant application, the Commission acted in conformity with its powers and duties under the statute. We do not find error of law, lack of evidence, or violation of constitutional rights. See *Duquesne Light Co. v. Pa. P. U. C.*, 176 Pa. Superior Ct. 568, 107 A. 2d 745.

Order affirmed.