Dunk et ux., Appellants, *v.* Pennsylvania
Public Utility Commission.

Argued September 16, 1966; reargued April 11, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Christian V. Graf*, with him *John E. Fullerton*, for plaintiffs, appellants.

*Anthony L. Marino*, Assistant Counsel, with him *Joseph C. Bruno*, Chief Counsel, for Public Utility Commission, appellee.

*Samuel Graff Miller*, with him *Donald Blanken*, *Edwin W. Scott* and *Vincent P. McDevitt*, for utility company, intervening appellee.

OPINION BY WATKINS, J., June 16, 1967:

This is an appeal from orders of the Pennsylvania Public Utility Commission approving the application

of Philadelphia Electric Company for the exercise of the right of eminent domain.

On March 26, 1965, the Philadelphia Electric Company filed an application for approval of the exercise of eminent domain by said company in acquiring a right of way for the construction, operation and maintenance of a line or lines for the transmission or distribution of electricity over and across a tract of land in Wallace Township, Chester County, owned by Charles S. Dunk and Bella M. Dunk, his wife, the appellants.

Hearings were held and on January 10, 1966, the Commission issued its order approving the application upon the finding that the service to be furnished by the company is necessary or proper for the service, accommodation, convenience or safety of the public and issued its certificate to that effect.

On January 29, 1966, a "Petition for Reconsideration, Modification of Order, Rehearing and Supersedeas" was filed with the Commission by the appellants. This petition raised for the first time the issues that jurisdiction was in the Federal Power Commission and that the company was not appropriating this property for its corporate use. The company filed an answer. The Commission denied the petition. This appeal from both orders followed and the company was permitted to intervene as a party appellee.

The questions before this Court on this appeal are as follows:

(1) Is there substantial evidence to support the finding of the Commission that the exercise of the right of eminent domain by the company is necessary or proper for the service, accommodation, convenience or safety of the public?

(2) Does the proposed transmission line create a danger to the appellants?

(3) Was the appropriation of the property here involved for the corporate use of Philadelphia Electric Company?

(4) Does the Federal Power Commission have exclusive jurisdiction over the construction of the electric transmission here involved?

(1)

The necessity of the proposed transmission line has already been upheld by this Court in other orders of the Commission. "The authority of this Court to overrule an order of the Commission is limited. We may not disturb such an order except for errors of law, lack of evidence to support a finding, determination or order of the Commission, or violation of constitutional rights, Section 1107 of the Public Utility Law, 66 P.S. §1437; Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission, 202 Pa. Superior Ct. 114, 195 A. 2d 162 (1963); and we may not exercise our independent judgment on the record or resolve conflicting evidence." *Clemmer v. Pa. P.U.C.*, 207 Pa. Superior Ct. 388, 217 A. 2d 800 (1966).

(2)

The Commission denied the application and it can easily be distinguished from *West Penn Power Co. v. Pa. P.U.C.*, 199 Pa. Superior Ct. 25, 184 A. 2d 143 (1962), on which the appellees rely. In the *West Penn* case, at page 29, this Court held: "The Simmons property is operated as a specialized fruit and vegetable farm, intensively cultivated by contours to control erosion, with scientific application of fertilizers to produce high soil fertility, and by an extensive irrigation system." On the appellants' farm property in the instant case only field crops, peaches and apples and some produce are grown.

The factual problems of whether the rights of property owners have been unreasonably disregarded and whether a hazard exists were determined in the *West Penn* case, against the petitioner, while in the instant case they were decided in its favor. In the *West Penn* case the Commission held that under all the evidence the selection of the right of way in question would create a situation involving hazard to the public and an unreasonable disregard of property owners' rights. This Court said in that case at page 32: "There is an abundance of testimony in the present record to support the conclusion that persons lawfully using the Simmons property would constantly be exposed to the hazard created by the proposed line."

Also it should be pointed out that in the *West Penn Power* case there was the suggestion of an alternate route that could be obtained by the company at relatively little increased cost and this buttressed the Commission's finding that the rights of the property owners had been unreasonably disregarded.

In the instant case there was an abundance of testimony, including the testimony of expert witnesses, to support the finding of the Commission. One of the expert witnesses testified, inter alia, as follows: "There is no hazard to personnel when using water in the form of a spray or mist. Once the water has broken up into droplets, there is no measurable leakage of current from the energized conductor to the irrigation equipment. A sprinkler system used for irrigation depends on a scattering of the flow from the nozzle for its effectiveness. A solid stream of water would not give an adequate coverage and might even be damaging to crops. Therefore, a sprinkler or a series of sprinklers would have no harmful effect on personnel any more than passing under the line in a heavy rain. It is my opinion that there is no hazard from a transmission line for an irrigation system consisting of pipes

laid on the ground with common types of sprinkler heads."

The fact finding Commission held: "Accordingly, it has not been shown by the evidence of record that the proposed transmission line would seriously curtail or interfere with the property owners' general farm operation or that the farming activities are of such specialized nature that the route selected by applicant for its proposed facilities would create a situation hazardous to the property owners, their employees or the public, or constitute an unreasonable disregard of the property owners' rights under the law."

In both cases it is the function of this Court to determine whether the facts are supported by competent evidence. We find that there was substantial competent evidence in the instant case to sustain the finding that the proposed transmission line does not create a danger to the appellants, and as Judge WRIGHT said in the *West Penn Power Company* case at page 32: "We will not substitute our judgment for that of the Commission unless the order is clearly unreasonable or amounts to a flagrant abuse of discretion."

## (3)

It is alleged that the energy to be transmitted over the line in issue will partially go to other utilities in Pennsylvania and other neighboring states and that, therefore, the appropriation of appellants' property is not for the "corporate use" of the company within the meaning of Act of May 8, 1889, P. L. 136, as supplemented by the Act of May 21, 1921, P. L. 1057, 15 PS §1182.

The pertinent provisions of the Act read as follows:

"(b) To appropriate property, outside the limits of public streets, lanes, alleys, or highways, and with-

in the borough, town, city, or district where it may be located, necessary for its corporate use in the construction, erection, operation, or maintenance of its buildings, machinery, apparatus, plants, works, equipment, and facilities for generating electric light, heat, and power, or any of them, for the transmission or distribution thereof . . .

"And provided further, That before any such company shall exercise the power conferred by this subsection, the Public Service Commission of the Commonwealth of Pennsylvania, upon application of such company, shall have found and determined, after public hearing, that the service to be furnished by said company through the exercise of said power is necessary or proper for the service, accommodation, convenience, or safety of the public . . .".

The Act permits an electric company to appropriate property, necessary for its "corporate use" in connection with the generation, transmission or distribution of electric energy. The record shows that the energy to be transmitted over the proposed line is necessary as a company load source. Its primary purpose is to take care of the substantial deficiencies in the company's generating capacity. The record further shows that the line is a crucial need for the corporate use by the company in facing present energy deficits and to allow it to fulfill its duty under the Pennsylvania Utility Law. This Court will take judicial notice of energy deficits facing most power companies as evidenced in recent serious power failures.

The line in question terminates at Whitpain, Montgomery County, Pennsylvania, in the territory of the company and all of the energy which passes over this line is owned by the company. The benefits that may accrue to other utilities that arise out of the Keystone Project or Interconnecting Power Pool arrangements are purely incidental to the corporate use contemplated

by the company. These pooling arrangements by the very nature of energy transmission are now an integral part of the power business and necessary for the public welfare.

We agree with the company that the construction of the Act cannot be unrealistically interpreted to mean "necessary for its sole corporate use". Admitting that a certain amount of the energy will be used by others outside the company's system, it is still, under the circumstances in this case, for its corporate use. There have been many approvals of the exercise of eminent domain where benefit accrued to companies and customers other than the utility exercising the power. *Stone v. Pa. P.U.C.*, 192 Pa. Superior Ct. 573, 162 A. 2d 18 (1960); *Laird v. Pa. P.U.C.*, 183 Pa. Superior Ct. 457, 133 A. 2d 579 (1957); *Phillips v. Pa. P.U.C.*, 181 Pa. Superior Ct. 625, 124 A. 2d 625 (1956).

The company has well stated the real problem. "These cases recognize that one of the principal considerations of public convenience and necessity is the need for integration of the bulk power transmission systems of electric utilities. Interconnections enable participants to obtain greater economies of operation, as well as allowing, each system to meet, adequately and safely, its varying and growing load demands, and to maintain constant voltage, frequency stability and reliability of service. In addition, there is the important element of need for additional power supply routes in the event of a national emergency. If the integration of bulk transmission systems is in the public interest, such integration surely must be consistent with and regarded as necessary for the corporate use of the individual participating utilities."

In the *Stone* case, supra, the property owner appealed an order of the Commission approving the construction of a transmission line from Chester County, Pennsylvania, to a point in Maryland, where it could

connect with a line to be constructed by another utility. In affirming the Commission's order Judge WRIGHT said: "One of the principal considerations of public convenience and necessity is the need for integration of the bulk power transmission systems of Philadelphia and Baltimore. Notwithstanding appellant's unsupported assertion to the contrary, it clearly appears that the interconnection will enable both systems to obtain greater economies of operation. Furthermore, each system will be able to meet, adequately and safely, its varying and growing load demands, and to maintain constant voltage, frequency stability, and reliability of service. Another principal element of necessity is that there are no existing facilities to provide for the transmission of the initial block of power from the proposed Peach Bottom Generating Station to distribution centers. Last, but not least, there is the important element of need for additional power supply routes in the event of a national emergency." *Stone v. Pa. P.U.C.,* supra at page 579. See also: *Smith v. Pa. P.U.C.,* 85 Dauphin County 106 (1966), to which exceptions have been filed and are still pending in the Supreme Court. The appropriation of the property in question is for the company's corporate use.

### (4)

The appellants contend that the Federal Power Commission has exclusive jurisdiction of the construction line involved because of the interstate nature of the line by virtue of the Federal Power Act, Act of August 26, 1935, c. 687, Title II, §213 et seq., 16 U.S.C.A. §824 et seq. Part II of this Act, known as the "Public Utility Act of 1935" relates to the regulation of electric utility companies engaged in interstate commerce and it is on this section that the appellants

rely. The same argument was advanced in Commonwealth Court in *Smith v. Pa. P.U.C.*, supra, where the same authorities cited in this case were rejected. "None of the authorities cited by plaintiffs convinces the chancellor that the jurisdiction of the Federal Power Act goes as far as plaintiffs suggest. Hartford Electric Light Co. v. Federal Power Commission, 131 F. 2d 953 (1942) required the utility only to submit reports; and Federal Power Commission v. Southern California Edison Co., 376 U.S. 205 (1964), held only that the Federal Power Commission had jurisdiction over the sale of the energy there in question."

The real reason for the passage of the Act was to fill the gap of unregulated wholesale sales of electric energy in interstate commerce. Its purpose was to regulate areas not closed to state control and to supplement, not supercede the regulatory powers of the states. *Rhode Island Public Utility Commission v. Attleboro Steam & Electric Co.*, 273 U.S. 83 (1927). "It is clearly the purpose of the entire Act to regulate only those matters which pertain to the interstate exchange of wholesale power." *Northern Pennsylvania Power Co. v. Pa. P.U.C.*, 132 Pa. Superior Ct. 178, 200 A. 866 (1938).

The declaration of policy set forth in §201(a) of Part II of the Act, 16 U.S.C.A. §824(a), provides: ". . . that Federal regulation 'of matters relating to generation to the extent provided [in this Part and the Part next following] and of that part of such business which consists of the transmission of electric energy in interstate commerce and the sale of such energy at wholesale in interstate commerce is necessary in the public interest, such Federal regulation, however, to extend only to those matters which are not subject to regulation by the States."

The Federal Power Commission's lack of jurisdiction over the construction of electric transmission pow-

er lines is clearly indicated by the submission of bills to the Congress by members of the Federal Power Commission to give them such jurisdiction. Congressional Record-Senate June 14, 1965, 12959, 12960, 12961, "Proposed Amendments to Federal Power Act."

As recent as July 27, 1966, the new Chairman of the Federal Power Commission testified in support of the bills before the United States Senate Commerce Committee. He quoted from the Legal Advisory Committee to the National Power Survey as follows: "Consideration should be given to amending the Federal Power Act to provide that an entity desiring to participate in the construction of an interstate transmission line for the purposes of power pooling, or interchange, could secure a license for such a line from the Federal Power Commission which would permit such an entity to condemn the necessary rights of way in a manner similar to that provided in Section 21."

Although it is the claim of the company that the line in question is not in interstate commerce and that the line is exempt from Federal Power Commission jurisdiction because of its local distribution nature, we agree with the company that Congress has never conferred jurisdiction on the Federal Power Commission to condemn property for the construction of an interstate transmission line for the purpose of power pooling or interchange.

Orders affirmed.