Dunk et ux., Appellants, *v.* Pennsylvania Public Utility Commission.

Smith et ux., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued May 23, 1967, and October 11, 1968; reargued January 22, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*David Berger*, with him *Norman C. Henss, Harold Greenberg*, and *Cohen, Shapiro, Berger, Polisher and Cohen*, for appellants (Dunk).

*Bayard M. Graf*, with him *Christian V. Graf*, for appellants.

*Anthony L. Marino*, Assistant Counsel, with him *Joseph C. Bruno*, Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*Charles E. Thomas*, with him *Jack F. Aschinger, Donald Blanken, Samuel Graff Miller, Vincent P. McDevitt*, and *Metzger, Hafer, Keefer, Thomas and Wood*, for Philadelphia Electric Company, appellee.

OPINION BY MR. JUSTICE ROBERTS, April 23, 1969:

These two cases have taken different routes and stopped at different stations, but both have now come to the same resting place, presenting the same issues. *Dunk*, No. 1 May Term 1969, is an appeal from an order of the Superior Court, 210 Pa. Superior Ct. 183, 232 A. 2d 231 (1967); *Smith*, No. 92 May Term 1967, is an appeal from the decree of the Court of Common Pleas of Dauphin County, 85 Dauph. 106 (1966). In both cases, appellants challenge the authority of the Pennsylvania Public Utility Commission to approve the Philadelphia Electric Company's request to allow condemnation of a right of way for the construction and operation as part of the "Keystone Project" of a power line which will run in Pennsylvania from Peach Bottom, York County, to a substation known as Whitpain in Montgomery County. Appellants are property

owners along the proposed right-of-way. *Smith* has reached us by certification from the Superior Court; subsequently we granted allocatur in *Dunk.* We combined the cases for argument, and in this opinion we affirm the dispositions of the courts below.

Appellants first maintain that exclusive jurisdiction over the matter here in issue—the right to condemn land for the construction and operation of this high-voltage line—is vested exclusively in the Federal Power Commission under the Federal Power Act, 16 U.S.C.A. §791 et seq. Section 824(a) notes that "the business of transmitting and selling electric energy . . . is affected with a public interest," but states also that federal regulation extends "only to those matters which are not subject to regulation by the States." Section 824(b), the section most heavily relied on by appellants, provides that the FPC "shall have jurisdiction over all facilities for such transmission or sale of electric energy [in interstate commerce] . . . ." Appellants argue that the power line involved in this case is a facility used in interstate commerce, and thus falls within the FPC's jurisdiction. We need not determine whether this line, which will run solely within Pennsylvania, but which arguably will be part of or an offshoot of an interstate network, is in interstate commerce within §824(b), because we agree with the courts below that in this situation, the FPC does not have jurisdiction over the *construction* of new facilities.

The Federal Power Commission Act aimed primarily at federal regulation of the interstate *sale* of electric energy. *Connecticut Light and Power Co. v. FPC,* 324 U.S. 515, 524, 65 S. Ct. 749, 753 (1945). *Jersey Central Power and Light Co. v. FPC,* 319 U.S. 61, 67, 63 S. Ct. 953, 956 (1943). Nowhere in the Act is there any indication that the FPC has jurisdiction over the construction of electric facilities, nor can appellants

point to any case where the FPC has attempted to exercise such jurisdiction. One of the sponsors of the Act when it was before Congress testified that "we have . . . sought to make it as clear as language will that Congress does not in this case intend to regulate anything except interstate power, sold at wholesale." Hearings on H.R. 5423, House Committee on Interstate and Foreign Commerce, 74th Cong., 1st Sess., at 1638. The only power of eminent domain mentioned under the Federal Power Act involves the explicit grant of the permissive, not exclusive, right given to the Commission under 16 U.S.C.A. §814, which involves only waterways improvements. This indicates that had Congress intended the FPC to have jurisdiction in the situation before us—and we repeat that this conjecture runs contrary to precedent and statutory history—it would have explicitly said so. Compare Natural Gas Act of 1938, 15 U.S.C.A. §717(f) (requiring a certificate of public convenience from the FPC for the construction of facilities for the sale or transportation of gas by gas companies within the FPC's jurisdiction).

Appellants seem to argue that it would be wise for the FPC, in carrying out its duty to regulate the sale of power and the rates at which it is sold, to be able also to control the construction of power facilities. Apparently the FPC thought so too, since it proposed two bills, either of which would have given it exactly that power. See S.2139, S.2140, 89th Cong., 1st Sess. However, neither bill was passed by Congress, and this gives clear proof that under present law, the FPC does not have jurisdiction over the construction of the type of facility involved in these cases.

Appellants next argue that because the power line in issue is part of an integrated system that will convey power to other parts of Pennsylvania and to other

states, the appropriation of appellants' property by the Philadelphia Electric Company is improper. Appellants rely on the Act of May 8, 1889, P. L. 136, as supplemented by Act of May 21, 1921, P. L. 1057, 15 P.S. §1182, which gives power companies the right "(b) To appropriate property, . . . for its corporate use in the construction, erection, operation, or maintenance of its buildings, machinery, apparatus, plants, works, equipment, and facilities for generating electric light, heat, and power, or any of them, for the transmission or distribution thereof . . . ." The statute goes on to require the P.U.C. to make a finding, after hearing, that the appropriation is for the public convenience and necessity.

Appellants claim that because the power line which they attack is part of a system that will provide energy to other than the Philadelphia Electric Company area, the appropriation is not for the company's "corporate use" within the statute. We agree with the courts below that the statute should not be read so narrowly. The chancellor in the *Smith* case found as a fact, on a record that supports his finding, that the primary purpose of the entire Keystone Project "is to take care of substantial deficiencies in generating capacities of intervening defendant," and that the primary purpose of the Peach Bottom-Whitpain line "is to transmit the additional energy required by Philadelphia Electric to supply the needs of its electric customers." 85 Dauph. at 117. We believe that a primary "corporate use," as this record discloses, is sufficient and that the statute does not require that the appropriation be for the *sole* corporate use of the condemning company. See *Stone v. P.U.C.*, 192 Pa. Superior Ct. 573, 162 A. 2d 18 (1960); *Laird v. P.U.C.*, 183 Pa. Superior Ct. 457, 133 A. 2d 579 (1957); *Phillips v. P.U.C.*, 181 Pa. Superior Ct. 625, 124 A. 2d 625 (1956). In light of the con-

temporary complexity and interdependence of electrical systems, appellants' position is untenable.

Finally, appellants Dunk (although apparently not **appellants Smith**) contend that the proposed right of way would create an unreasonable hazard. We agree with the Superior Court, which fully and adequately disposed of this issue, that this decision was within the Commission's discretion, and that there are adequate facts on the record to support the Commission's determination. *West Penn Power Co. v. P.U.C.*, 199 Pa. Superior Ct. 25, 184 A. 2d 143 (1962), in which the Commission's refusal to grant a right of way as being too hazardous, is, as the Superior Court correctly points out, factually distinguishable and in any event supportive only of the proposition that this decision is for the Commission's determination, which will not be overturned absent an abuse of discretion.

In *Dunk v. P.U.C.*, No. 1 May Term 1969, the order of the Superior Court is affirmed.

In *Smith v. P. U. C.*, No. 92 May Term 1967, the decree of the Court of Common Pleas of Dauphin County is affirmed, each party to pay own costs.

Mr. Justice COHEN dissents.