502 A.2d 162

**FAIRVIEW WATER COMPANY, Appellant,**

v.

**PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Appellee,**

**and**

**Pennsylvania Power & Light Company, Intervenor.**

Supreme Court of Pennsylvania.

Argued May 14, 1985.

Decided Dec. 11, 1985.

Reargument Denied March 18, 1986.

Joseph J. Malatesta, Jr., Harrisburg, for appellant.

Mark C. Morrow, Louis A. Knight, Charles F. Hoffman, Harrisburg, for appellee.

David J. Dulick, Allentown, for intervenor Pa. Power & Light Co.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

On August 18, 1953, Fairview Water Company (Fairview) and Pennsylvania Power & Light Company (PP & L) entered into an agreement requiring Fairview to convey a right-of-way to PP & L for construction of an aerial electric transmission line across Fairview's property in Monroe County. After the line was installed, it was discovered that this line was not constructed in the area covered by the easement. To rectify this problem the parties entered into a 30-year lease on June 13, 1955 which allowed PP & L to maintain the line as constructed. This lease agreement was made retroactive to July 1, 1953 with a termination date of July 1, 1983.

By the terms of the lease, PP & L was granted the option to renew for an additional period of five years, subject to Fairview's right to terminate the original lease by giving

PP & L one year's advanced notice of the original expiration date. On September 13, 1976, Fairview formally notified PP & L of its intent to terminate the lease on July 1, 1983.

In response to this notice, PP & L filed an application under the Act of May 5, 1933, P.L. 364, as amended, 15 P.S. § 1322 with the Pennsylvania Public Utility Commission (PUC) requesting a finding and determination that its electric transmission line was necessary and proper for the service, accommodation, convenience or safety of the public.

After hearing and argument, the Administrative Law Judge issued his initial decision granting PP & L's application. In so doing, the Administrative Law Judge determined that the service was necessary and proper and also determined the scope and validity of the easement. The decision was subsequently adopted by the PUC and affirmed by Commonwealth Court. In affirming the PUC, the Commonwealth Court held that the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§ 1–101—1–901, is not applicable, "when a condemnee challenges the taking of an easement or right-of-way." 83 Pa.Cmwlth. 627, 629, 479 A.2d 20, 22 (1984). The Commonwealth Court interpreted Section 1322(C) under which the application was made as simply limiting the preliminary phase of the hearing on the petition to a determination of the necessity of the service. The PUC's determination of scope and validity under Section 1322(C) is reserved until this initial necessity of service phase is completed. According to Commonwealth Court, the reason for this bifurcation was to prevent jurisdictional issues from clouding the preliminary determination of necessity. Thus, once the Administrative Law Judge determined that the proposed service was necessary and proper, he had authority to continue taking evidence on the petition to determine the specific scope and validity issues raised by the condemnee. This he did in his findings of fact and conclusions of law. For the reasons set forth hereinafter, we reverse.

The issue before us is in what forum may a condemnee challenge the legality of a taking when a public utility attempts to condemn a less-than-fee interest in property and the PUC has determined that the subject property is necessary for the utility service. This precise issue presents a question of first impression although we have previously addressed similar issues.[1] Most recently we have decided that a court of equity may determine the validity and scope of a taking of a less-than-fee interest by a utility company. *Redding v. Atlantic City Electric Company*, 440 Pa. 533, 269 A.2d 680 (1970). However, in *Redding* we did not decide whether the PUC also has such power and more specifically whether such power is founded in Section 1322(C). This determination rests upon the interpretation of the following language:

C. The powers conferred by subsection A of this section may be exercised to condemn property outside the limits of any line of railroad, street railway, street, highway, water or other public way or place for the purpose of erecting poles or running wires or other aerial electric, intrastate aerial telephone or intrastate aerial telegraph facilities only after the Pennsylvania Public Utility Commission, upon application of such public utility corporation, shall have found and determined, after notice and opportunity for hearing that the service to be furnished by said corporation through the exercise of said power is necessary or proper for the service, accommodation, convenience or safety of the public. The power of the public utility corporation to condemn the subject property or the procedure followed by it shall not be an issue in the commission proceedings held hereunder and notwithstanding section 1111 of the Public Utility Law neither the Commonwealth Court, the Court of Common Pleas of Dauphin County nor any other court of common pleas shall entertain any proceeding questioning the jurisdiction of the commission under this subsection. A final order of

---

1. See *Dunk v. Pennsylvania Public Utility Commission*, 434 Pa. 41, 252 A.2d 589 (1969); *Duquesne Light Company v. Upper St. Clair Township*, 377 Pa. 323, 105 A.2d 287 (1954).

the commission approving or denying an application under this subsection, including an order involving a question of jurisdiction hereunder, may be made the subject of an appeal in the manner provided by law.

Act of July 20, 1968, P.L. 459, No. 216 § 17; as amended, 15 P.S. § 1322(C). In essence, we must determine whether this section grants to the PUC power to determine the scope and validity of the condemnation proceedings. As indicated, Commonwealth Court found an implied power in Section 1322(C).

Section 1322(C) states that a utility may condemn property only after an application has been filed for a determination of whether the service, which is the basis of the condemnation, is necessary and proper for the general welfare of the public. A hearing must be conducted to give all parties the opportunity to be heard regarding this application. The statute then states that, "the power of the public utility corporation to condemn the subject property or the procedure followed by it shall not be an issue in the commission proceedings held hereunder...." The appellant relies upon this language to support its position that the scope and validity issue should not be considered by the PUC in conjunction with the "necessary and proper" determination. In disagreeing with the appellant, Commonwealth Court held that this provision does not limit the power of the PUC but merely restricts its inquiry until after the initial necessity of service phase of the proceedings. The Commonwealth Court based its interpretation in the subsequent language of the statute that restricts a condemnee from requesting relief from either Commonwealth Court or the Court of Common Pleas until the final order of the commission. This restriction includes questions of jurisdiction.

Commonwealth Court's interpretation would be correct if Section 1322(C) did not contain restrictive language regarding the scope and validity power and the issue of jurisdiction. For example, the issue of the power of the public utility corporation to condemn the subject property is pro-

hibited from being raised in the "proceedings held *hereunder*". The word "hereunder" refers to the proceedings set forth in Section 1322(C) which is limited to the application for necessity of service determination. Likewise, the prohibition against questioning the jurisdiction of the commission before Commonwealth Court or the Court of Common Pleas is limited to the proceedings under Section 1322(C), or the necessity of service determination. Finally, Section 1322(C) then permits the condemnee to appeal the final order of the commission regarding the application for determination of necessity of services, including jurisdiction, as in any other legal proceeding.

Thus, the statute is clear and unambiguous in setting forth the scope of the hearing under 1322(C). That subsection of the general section regarding eminent domain relates solely to a necessity of service determination. Under the Statutory Construction Act,[2] "... every statute shall be construed, if possible, to give effect to all of its provisions", 1 Pa.C.S.A. § 1921(a) and "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). The words used in the statute shall be construed according to their common usage unless specifically defined otherwise. 1 Pa.C.S.A. § 1903.

It is clear from reviewing Section 1322 and Subsection C that the power of the utility corporation to condemn is not to be part of the initial application for a determination that the requested service is required for the general welfare of the public. We have held in *Redding* that a court of equity may determine the scope and validity of a proposed condemnation once the necessity of the service has been determined. Our holding today therefore is that under Subsection C of Section 1322, the only issue before the PUC is whether or not the easement is necessary and proper for the service, accommodation, convenience or safety of the public. That hearing cannot be prematurely interrupted by questions of jurisdiction regarding that issue. Once the

2. Act of December 6, 1972, P.L. 1339, 1 Pa.C.S.A. § 1501 et seq.

commission has ruled upon the necessity of service, then and only then may a condemnee question the scope and validity issue before the appropriate judicial forum.

■ We have already determined in *Redding* that a condemnee may question the power of the public utility corporation to condemn the subject property in a court of equity. In *Redding*, we declined to decide whether the PUC also had such powers, because that determination was unnecessary to dispose of the appeal. Even though neither party has briefed the issue of whether the PUC has such powers, we will review the question because it is related to the issue of jurisdiction which is always reviewable on appeal.

We have held that since the PUC is a legislative creation, any powers it exercises must be found in the expressed words of the enabling statute or by strong and necessary implication when required for its expressed powers. *Pittsburgh Railways Co. v. Pa. Pub. Util. Com'n.*, 427 Pa. 562, 237 A.2d 602 (1967); *Delaware River Port Auth. v. Pa. Pub. Util. Com'n.*, 393 Pa. 639, 145 A.2d 172 (1958); *Process Gas Consumers Group v. Pa. Pub. Util. Com'n.*, 84 Pa.Cmwlth. 76, 480 A.2d 1273 (1984), alloc. granted February 5, 1985, 129 M.D. 1984; *Western Pa. Water Co. v. Commonwealth, Pub. Util. Com'n.*, 10 Pa.Cmwlth. 533, 311 A.2d 370 (1973); *NAACP, Inc. v. Pa. Pub. Util. Com'n.*, 5 Pa.Cmwlth. 312, 290 A.2d 704 (1972). As we have stated today, Section 1322(C) does not provide the PUC with the necessary jurisdiction to determine the scope and validity of an easement. Consequently, if the PUC is to have such power it must be explicitly found within other legislative enactments. Section 501 of the Public Utility Code, Act of July 1, 1978, P.L. 598, No. 116, 66 Pa.C.S.A. § 101 et seq., sets forth the general powers of the PUC:

> In addition to any powers expressly enumerated in this part, the commission shall have full power and authority, and it shall be its duty to enforce, execute and carry out, by its regulations, orders, or otherwise, all and singular, the provisions of this part, and the full intent thereof; and shall have the power to rescind or modify any such

regulations or orders. The express enumeration of the powers of the commission in this part shall not exclude any power which the commission would otherwise have under any of the provisions of this part.

This broad power must be read in light of the enumerated powers set forth in the Public Utility Code [3] and in conjunction with the intended purpose of the commission, i.e. the regulation and control of public utilities in determining the cost and service to the public. Thus it is clear that Section 501 was intended to give the commission full powers in regulating services and rates.

■ As Section 501 states, the PUC has the general power to enforce its enumerated powers. An obvious omitted enumerated power is the power to condemn. Other than the Business Corporation Law [4], the Act of 1933, condemnation powers of a public utility corporation is founded in the Eminent Domain Code. [5]

The Eminent Domain Code sets forth generally the applicable procedures to guarantee due process in the taking of a person's property. A public utility corporation is required to comply with the procedures set forth in the Eminent Domain Code when taking property for utility services. 15 P.S. § 1322(H). This includes filing of a declaration of taking, the appointment of a board of viewers, and assessment of monetary damages if an agreement cannot be reached between the parties. However, the Eminent Domain Code specifically holds it is not applicable to a condemnation of a right of way by a utility. 26 P.S. § 1–901. Therefore, the Eminent Domain Code explicitly excludes the type of case now before us, such that a condemnee cannot avail itself of the procedures set forth in the Eminent Domain Code when questioning the scope and validity of an easement.

**3.** See 66 Pa.C.S.A. §§ 502–513.
**4.** 15 P.S. § 1322(C).
**5.** 26 P.S. § 1–101 et seq.

■ While Section 1322(C) grants a public utility corporation the authority to appropriate property in general for easements for utility services, Section 3272 [6] grants a public utility corporation the authority to acquire easements under and around rivers, streams and other waterways for its corporate use. When taking an easement pursuant to Section 3272, damages are determined in accordance with Sections 3021–3023 of the Business Corporation Law, which is identical to the provisions of the Eminent Domain Code.[7] Thus, damages are determined by a board of viewers appointed by the Court of Common Pleas and not the PUC. Except for Sections 3272 and 1322 neither a public utility corporation nor the PUC is granted condemnation powers. Since Section 1322(C) restricts the PUC to determination of the necessity of the service, and Section 3272 requires damages to be determined by a board of viewers appointed by the Court of Common Pleas when acquiring an easement for corporate use, it is clear that the legislature did not intend that the PUC have full or implied powers in all aspects of a condemnation proceeding. We therefore hold that the PUC does not have jurisdiction to determine the scope and validity of an easement. Once there has been a determination by the PUC that the proposed service is necessary and proper, the issues of scope and validity and damages must be determined by a Court of Common Pleas exercising equity jurisdiction. To hold otherwise would result in granting a power to the PUC which the legislature has decided in its wisdom to withhold.

The Order of the Commonwealth Court is reversed.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of the Commonwealth Court is reversed.

6.  15 P.S. § 3272.

7.  Prior to its repeal, Section 3021–3023 was also applicable to taking of property in fee simple. Now procedures in taking of fee simple title, is controlled by the Eminent Domain Code. (See Act of July 20, 1968 P.L. 459 No. 216, 15 P.S. § 2204(e)(1).

HUTCHINSON, J., did not participate in the consideration or decision of this case.

NIX, C.J., filed a concurring opinion.

NIX, Chief Justice.

I agree with the result reached by the majority that Section 322 of the Business Corporation Law, Act of May 5, 1933, P.L. 364, *as amended*, 15 P.S. § 1322, limits the Pennsylvania Public Utility Commission's role to that of making an initial determination of necessity for the proposed condemnation. *See* 15 P.S. § 1322(C). As stated by the majority, "Once there has been a determination by the PUC that the proposed services is necessary and proper, the issues of scope and validity and damages must be determined by a Court of Common Pleas exercising equity jurisdiction."

I believe, however, that the majority unnecessarily reached the issue, not raised by the parties, whether the PUC has the power to condemn the subject property in a court of equity. As we found in *Redding v. Atlantic City Electric Company*, 440 Pa. 533, 269 A.2d 680 (1970), here that determination is unnecessary for the disposition of this appeal.