620 A.2d 609

**RHEEMS WATER COMPANY, Petitioner,**

**v.**

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1992.

Decided Jan. 21, 1993.

Anthony C. Lomma, for petitioner.

Stanley E. Brown, Asst. Counsel, for respondent.

Robert P. Haynes, III, for intervenor, Mount Joy Tp. Authority.

Before DOYLE and SMITH, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Rheems Water Company (Rheems) petitions this court for review of an order of the Pennsylvania Public Utility Commission (PUC) which conditionally granted its application for a certificate of public convenience to provide water service to West Donegal Township but denied its application for a certificate of public convenience for service to Mount Joy Township.

The conditions the PUC imposed on the certificate related, broadly speaking, to reducing the nitrogen nitrates in the Rheems water supply, improving its service to its customers, improving its unaccounted for water accounts and entering into a bulk water arrangement with Mount Joy Township Authority (MJTA) for the supply of water to MJTA so that MJTA could service homes on East Harrisburg Avenue currently being served by Rheems.

Rheems is a Pennsylvania business corporation duly incorporated on June 26, 1906, for the purpose of supplying water to the public in West Donegal Township. There was no mention of Mount Joy Township in the "letters patent" which were approved by the Water Supply Commission (predecessor to the PUC) on August 18, 1906.

Rheems currently services 362 customers in West Donegal Township and 66 customers in adjacent Mount Joy Township. The Townships are divided by East Harrisburg Avenue, in which Rheems has a water main connecting all its customers. It is unclear how long Rheems has been providing water service to these customers.

In 1975, National Utilities, Inc. (NUI), a regulated public utility, acquired the stock of Rheems. NUI did not obtain PUC approval pursuant to Section 1102 of the Public Utility Code, 66 Pa.C.S. § 1102, prior to acquiring the stock. On June 12, 1989, Rheems filed an application with the PUC for a certificate of public convenience to permit it to provide public water service in West Donegal Township, in portions of East and West Donegal Townships and for 66 customers in Mount Joy Township.

The Administrative Law Judge (ALJ) issued his initial decision on May 25, 1991. Exceptions were filed by both parties which were decided in an order issued by the PUC on April 8, 1992. This petition for review followed.

The issues raised by the petitioner Rheems are:

1) Whether the PUC committed an error of law by refusing to recognize Rheems as a "grandfathered" public utility contrary to 66 Pa.C.S. § 103 which recognizes that "[a]ny public utility ... rendering service or having the right to render service on the day preceding the effective date of this part shall be entitled to the full enjoyment and the exercise of all and every right, power and privilege which it lawfully possessed on that date."

2) Whether the PUC erred when it denied Rheems' application to provide water service to certain customers in Mount Joy Township when no other entity can provide the service.

3) Whether the PUC's decision ordering Rheems to enter into a bulk water agreement with Mount Joy Township Authority amounts to a condemnation of Rheems' property and equipment, constituting an abuse of discretion.

The original law governing public utilities, known as the Public Service Company Law (Act of July 26, 1913, P.S. 1374, No. 854), was repealed and its provisions reenacted (eventually), as the Public Utility Code, 66 Pa.C.S. §§ 101–3315. Section 103(a) provides a "grandfather" exemption to any company rendering service or having the right to render service prior to the date the Public Utility Code was enacted.

 Upon analysis of Rheems' initial contention that the PUC erred in its refusal to recognize Rheems' "grandfathered" status, it is apparent that that fact is irrelevant. First, assuming that Rheems is a "grandfathered" utility, none of the conditions imposed by the PUC is interfering in that status. While such a status protects the utility from an interference with its service rights and excuses that utility from the necessity of obtaining a certificate of public convenience, it certainly does not guarantee that the PUC will not

order it to improve the condition of its water or its service. The grant of a certificate of public convenience is based on a finding that a certificate is necessary to the public convenience, accommodation and safety. In addition to its general enforcement powers, 66 Pa.C.S. §§ 501–502, the PUC may revoke a certificate upon cause shown.

Secondly, if in 1937 Rheems enjoyed the status of a "grandfathered" utility, when it sold its stock in 1975 to NUI, a regulated utility, without PUC approval as required by Section 1102 and in 1989 applied for a certificate of public convenience, it at that time submitted to the jurisdiction of the PUC and was subject to Section 1103 of the Code, 66 Pa.C.S. § 1103, which provides:

1103. Procedure to obtain certificates of public convenience.

(a) General rule.—Every application for a certificate of public convenience shall be made to the commission in writing, be verified by oath or affirmation, and be in such form, and contain such information, as the commission may require by its regulations. A certificate of public convenience shall be granted by order of the commission, only if the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public. *The commission, in granting such certificate, may impose such conditions as it may deem to be just and reasonable.* (Emphasis added.)

The conditions imposed by the PUC relating to the condition of the water and the service were reasonable and just and therefore properly imposed.

By virtue of that same statutory authority, the PUC reversed the ALJ and also conditioned the award of the certificate upon the provision that Rheems enter into a bulk water agreement with MJTA to supply the 66 customers currently serviced by Rheems in Mount Joy on East Harrisburg Avenue.

■ While the Commission is granted great latitude in determining these conditions, *Seaboard Tank Lines, Inc. v. Pennsylvania Public Utility Commission,* 93 Pa.Commonwealth Ct. 601, 502 A.2d 762 (1985), we are compelled to examine this decision in order to ascertain whether it has abused that discretion.

■ Administrative Law Judge Lovenwirth made the following findings of fact:

West Donegal Township and Mt. Joy Township are separated by East Harrisburg Avenue (N.T. 10), and on the Mt. Joy side of the boundary line Applicant serves approximately sixty-four residential customers who live immediately adjacent to East Harrisburg Avenue, one institutional customer (Faith Bible Church) situated about seventy-five feet from said highway, and one industrial customer, located far from East Harrisburg Avenue (Wenger's Feed Mill) (N.T. 15, 17, 18, 76, 77, 155, 156; Mt. Joy Authority Exhibit No. 9). On the West Donegal side of East Harrisburg Avenue, there are 362 customers served over a larger area not restricted to buildings immediately adjacent to East Harrisburg Avenue.

The instant record fails to disclose any provider of public water service, other than Applicant, which is ready, willing and reasonably able to provide public water service in West Donegal Township and in that portion of Mt. Joy Township along East Harrisburg Avenue where Applicant's water main is in place.

There is a public need for Applicant's water service throughout the area encompassed by this application; provided, however, there is no public need for Applicant's water services in those portions of Mt. Joy Township which are not within 100 Feet from Applicant's water facilities already in place.

Applicant is financially fit to provide water service to the public for compensation.

Protestant [MJTA] was established for purposes of providing water and sewer utility service, and it currently serves 982 sewer customers and 250 water customers, all in

Mt. Joy Township (N.T. 148, 149; Mt. Joy Township Authority No. 8).

Protestant started providing water service in 1989, before which time it only provided sewer service (N.T. 154, 155).

All of the 250 water customers of Protestant are located adjacent to Elizabethtown Borough, which is not close to the proposed service area of Applicant and which is not close to any of the Applicant's water facilities (N.T. 174).

Currently, no wells or water sources are owned by Protestant, but its intention was to drill two or three test wells sometime in the spring or summer of 1990 (N.T. 176).

The only facilities owned by Protestant are distribution mains and hydrants (N.T. 178). There are no existing water mains belonging to Protestant excepting those immediately adjacent to the Elizabethtown Borough borders, which area essentially constitutes the existing water service area of the Authority (N.T. 223).

There is no water main running from the Protestant's facilities near the Borough of Elizabethtown to those of Applicant along East Harrisburg Avenue (N.T. 224). The main extension to a location near Applicant's facilities would take approximately six months to construct at an estimated cost of $300,000, and that would not include a main extension down East Harrisburg Avenue (where Applicant's present water main is located) (N.T. 226, 227). If a further extension would have to be made along East Harrisburg Avenue (the site of Applicant's main) that would involve additional time, and would cost Protestant an additional $500,000 for hard construction costs, plus additional costs such as those associated with the location of laterals (N.T. 256).

The Commission, in ruling on MJTA's exception to the decision of the ALJ, reversed the ALJ's ruling that allowed Rheems to continue to supply its 66 Mount Joy Township customers and, in its place, provided that Rheems would be required to enter into a bulk water agreement with MJTA which would then supply the water through mains owned by Rheems.

This action the Commission seems to justify as in the public interest by reliance upon the statement that the bulk water agreement will therefore enable MJTA "to provide service to all customers within its municipal limits." We fail to see how this geographical nicety alone[1] can support the requirement that Rheems supply water by a bulk water agreement and, in essence, transfer the use, if not the ownership, of Rheems' mains and service/lines to the MJTA (the order makes no mention of compensation for the use of the mains) and thus deprive Rheems of its property. Such a condition is unreasonable. Since we come to this conclusion, we need not pass on Rheems' argument that the order effects a taking of its property without due process or just compensation. *But see Fairview Water Company v. Pennsylvania Public Utility Commission*, 509 Pa. 384, 502 A.2d 162 (1985) (PUC's condemnation authority circumscribed by limits and procedures of Eminent Domain Code).

We therefore affirm the decision of the PUC in all respects except paragraphs five and twelve of its order. The orders in those paragraphs are reversed and the PUC is directed to issue a certificate of public convenience to Rheems for service to the 66 customers in Mount Joy Township, subject to the other conditions previously imposed.

## ORDER

NOW, this 21st day of January, 1993, the order of the Pennsylvania Public Utility Commission, dated April 8, 1992 at No. A–212540 is hereby reversed insofar as paragraph five (5) denies petitioner's application for a certificate of public conve-

---

1. In its brief, the PUC contends that the agreement for the bulk supply of water to MJTA would allow a blending of Rheems' water supply with that of MJTA's current source, thereby having the salutary effect of reducing the nitrate levels in the water flowing to the Mount Joy customers. However, ALJ Lovenwirth found that MJTA wishes to purchase water in bulk from Rheems *after* it eliminates nitrate problems. (Initial decision of the ALJ, April 23, 1992, p. 85.) The PUC points to no support in the record for this purported reason for requiring a bulk water agreement, which, in any case, is not served if the water is not purchased and blended until after the nitrate levels are reduced.

nience and insofar as paragraph twelve (12) directs petitioner to enter into a bulk water supply agreement with Mount Joy Township Authority. The Public Utility Commission is ordered to grant petitioner's application for a certificate of public convenience covering the territory and customers in Mount Joy Township currently served by petitioner. The order is affirmed in all other respects.