## Philadelphia Electric Company *v.* Carr.

Argued February 10, 1972, before Judges WILKIN-SON, JR., MENCER and ROGERS, sitting as a panel of three.

*Robert J. Sugarman,* with him *Bernard A. Ryan,* and *Dechert, Price & Rhoads* and *Harold B. Vikoren,* for appellant.

*Robert F. Ruehl,* with him *William M. Power* and *Power, Bowen & Valimont, Edward G. Bauer, Jr.,* and *Donald Blanken,* for appellee.

Opinion per Curiam, March 9, 1972:

The orders of the Court of Common Pleas of Bucks County approving the condemnation bond filed by Philadelphia Electric Company and dismissing appellant's exceptions and preliminary objections to approval of said bond are affirmed upon the opinion of Judge Robert M. Mountenay. Judge Mountenay's opinion follows:

"This case represents but one aspect of a lengthy controversy between the Philadelphia Electric Company, condemnor herein, and a number of citizens of Bucks County relative to the construction of a high tension electric transmission line through a portion of this county.

"In this particular case, the condemnor filed an application with the Public Utility Commission on October 17, 1968, pursuant to the provisions of Section 322 of the Act of May 5, 1933, P. L. 364, as supplemented and amended, 15 P.S. §1322(C), for a determination that the service to be furnished through the condemnor's power of eminent domain in this particular instance was necessary or proper for the service, accommodation, convenience or safety of the public. The condemnee opposed this application in the proceedings before the Public Utility Commission contending generally that the location of the proposed right of way was not suitable. Nevertheless, after hearing, the Public Utility Commission, on May 4, 1970, issued a certificate to the effect that the proposed facilities were necessary or proper for the service, accommodation or safety of the public, thereby enabling the condemnor to proceed with the taking of the subject premises. The order of the Public Utility Commission was not appealed.

"Thereafter, the condemnor filed in this court a petition for approval of bond in accordance with the provisions of Section 41 of the Act of April 29, 1874, P. L.

73, as amended, 15 P.S. §3022. Condemnee thereupon interposed a pleading denominated 'Exceptions and Preliminary Objections to Petition for Approval of Bond' raising the issues hereinafter discussed. The undersigned dismissed the condemnee's pleading and approved the condemnor's bond, whereupon the condemnee appealed.

"The condemnation in question involves the construction of an electric transmission line through what condemnee asserts is a scenic and historic area. Accordingly, the first objection raised by the condemnee's pleading is essentially that the condemnor acted in an arbitrary and capricious manner in selecting the location of the proposed right of way in general and in selecting the location of a certain supporting tower or structure on condemnee's land in particular. Secondly, the condemnee objects that the condemnor failed to comply with the notice requirements of Section 405 of the Eminent Domain Code, Act of June 22, 1964, P. L. 84, 26 P.S. §1-405. No question as to the sufficiency of the bond is raised.

"We shall first address ourselves to the problem of notice. Whether the condemnor is required to comply with the notice provisions of Section 405 of the Eminent Domain Code will depend upon whether and to what extent the Eminent Domain Code is applicable to these proceedings. Section 901 thereof, 26 P.S. §1-901, reads in pertinent part as follows: 'This act shall not . . . repeal, modify or supplant any law insofar as it confers the authority or prescribes the procedure for condemnation of *rights-of-way or easements* for occupation by water, *electric,* gas, oil and/or petroleum products, telephone or telegraph lines used directly or indirectly in furnishing service to the public. If the condemnation for occupation by water, electric, gas, oil and/or petroleum products, telephone or telegraph lines

consists of the *taking of a fee,* all the provisions of this act shall be applicable.' (Emphasis supplied.) Thus it will be seen that unless the condemnation in question involves the acquisition of fee title, the provisions of the Code, such as those of Section 405, dealing with condemnation procedures, are not applicable. Therefore, we must first determine whether the interest to be acquired is a fee or a lesser estate. In this regard, Section 322(D) of the Act of 1933, supra, 15 P.S. §1322(D) states that the taking is deemed to be in fee simple unless the condemnation resolution specifies a lesser estate.

"Turning then to the condemnation resolution itself (exhibit B of condemnor's petition for approval of bond), we note the following language: '. . . Company appropriates the hereinafter described property . . . for its corporate uses as a *right of way* for the . . . construction . . . and maintenance of facilities including towers . . . for the transmission and/or distribution of electricity. . . .' (Emphasis supplied.) The resolution contains no language contradictory to the foregoing.

"Therefore, we conclude that the estate appropriated constitutes a right of way and not a fee, that the provisions of the Eminent Domain Code prescribing the procedure for condemnation are not applicable to the instant proceedings, that Section 405 of the Code constitutes a procedural provision, and, accordingly, that the condemnor was not obliged to comply with the notice provisions thereof.

"More basic, however, is the right of the condemnee to assert at this time the substantive issues raised by her 'exceptions and preliminary objections', i.e., the allegedly arbitary and capricious manner in which the condemnor exercised its power of eminent domain and the consequent asserted invalidity of the taking. Were all of the provisions of the Eminent Domain Code appli-

cable to these proceedings, the issues raised by the condemnee not only could have been asserted but indeed should have been asserted by preliminary objections pursuant to the provisions of Section 406 of the Eminent Domain Code, 26 P.S. §1-406. However, since as pointed out above, the provisions of the Code pertaining to condemnation procedures are not, according to Section 901, 26 P.S. §1-901 thereof, applicable to the type of condemnation here involved, there is a substantial question as to the propriety of the condemnee's questioning the validity of the taking in this manner. Indeed, the law in this regard appears to be in a somewhat transitional state as the result of two relatively recent Supreme Court decisions, viz., McConnell Appeal, 428 Pa. 270 (1968), and Redding v. Atlantic City Electric Company, et al., 440 Pa. 533 (1970).

"In McConnell Appeal, supra, the court, by a four to three decision, held that subsequent to the adoption of the Eminent Domain Code, preliminary objections filed pursuant to Section 406 thereof constituted the exclusive method of challenging the power of a natural gas company to condemn not only fee titles but lesser estates as well—and this despite the provision of Section 901 of the Code, supra, which purported to exclude gas line condemnations as well as electric line condemnations from the operation of certain procedural provisions of the said Code. This result, said the majority opinion, was mandated as a matter of constitutional necessity by reason of prior decisions holding that the invalidity of such condemnations could no longer be asserted by way of a separate action in equity. With equity unavailable, were such challenges not permitted by way of preliminary objections, reasoned the majority, a condemnee would be deprived of a forum in which to contest the validity of the taking. The absence of a forum in the case of gas line condemnations was further

emphasized, according to the majority opinion, by the fact that while the statutes authorizing condemnations by electric companies expressly provided for a public hearing before the Public Utility Commission on the question of the necessity or propriety of the condemnation prior to the exercise of the power[1], no such forum was provided in the case of gas line condemnations.

"Mr. Justice ROBERTS, in a dissenting opinion in which Mr. Chief Justice BELL and Mr. Justice EAGEN joined, reasoned that the decisions relied upon by the majority as depriving persons questioning the validity of a taking of an equitable remedy, were distinguishable from the case then before the Court and that equity should thus still be available for such purpose. The constitutional problem raised by the majority being thus disposed of, the dissenting opinion went on to point out that there was, therefore, no need to strain the language of Section 901 of the Eminent Domain Code. The dis-

---

[1] The court in the *McConnell Case* refers to the Act of May 8, 1889, P. L. 136, §4, added May 21, 1921, P. L. 1057, §1, 15 P.S. §3272, the language of which, to the extent here pertinent, is almost identical to the language of Section 322 of the Act of May 5, 1933, P. L. 364, as supplemented and amended, 15 P.S. §1322(C), pursuant to which the administrative hearing in the instant case was conducted. Section 4 of the Act of 1889 reads in part as follows: ". . . That before any such company shall exercise the power conferred by this subsection, the Public Service Commission of the Commonwealth of Pennsylvania, upon application of such company, shall have found and determined, after public hearing, that the service to be furnished by said company through the exercise of said power is necessary or proper for the service, accommodation, convenience, or safety of the public."

Section 322(C) of the Act of 1933 reads in part: "The powers conferred by subsection A of this section may be exercised . . . only after the Pennsylvania Public Utility Commission, upon application of such public utility corporation, shall have found and determined, after notice and opportunity for hearing that the service to be furnished by said corporation through the exercise of said powers is necessary or proper for the service, accommodation, convenience or safety of the public."

senters would have held, accordingly, that in the case before them, the condemnee's challenge to the validity of the condemnation should not have been raised on preliminary objections.

"Two years after the McConnell decision, the Supreme Court in Redding v. Atlantic City Electric Company, et al., supra, filed an opinion which seemed in large measure to follow the reasoning of the dissent in McConnell, and which, while not specifically overruling McConnell, at least achieved a result consistent with the reasoning of the dissenting opinion therein.

"In the Redding case, preliminary hearings were held before the Public Utility Commission pursuant to the provisions of Section 4 of the Act of May 8, 1889, supra, 15 P.S. §3272 (see footnote 1). The condemnees in the Redding case appeared at these hearings in opposition to the condemnors' application, but the Commission rejected the condemnees' position and issued a certificate authorizing the condemnors to proceed. The condemnees did not appeal the Commission's order but rather instituted an action in equity to enjoin the condemnors from entering upon the land, averring in their complaint that the condemnors lacked the power to condemn (for reasons not here material). Whether the issues raised by the condemnees' complaint in equity were identical to those raised before the Public Utility Commission is not clear. In any event, the condemnors, apparently relying upon the majority opinion in McConnell Appeal, filed preliminary objections asserting that equitable relief was not available to the condemnees. The Supreme Court held, however, that equity jurisdiction was not foreclosed by the applicable statutes and that, therefore, the action in equity could not be dismissed on a jurisdictional basis.

"While the decision itself in the Redding case was quite narrow, the language of the opinion provides a

great deal of guidance. The court reviewed several appellate decisions which implicitly approved the action of the Public Utility Commission in situations where the Commission went beyond mere questions of public convenience and included questions of the scope and validity of condemnation takings within the compass of its orders. The court then went on to recall the language of the McConnell case wherein the majority opinion drew a distinction between gas line condemnations and electric line condemnations, this distinction being, as previously stated, that Public Utility Commission Hearings were required by statute in the latter case but not in the former. (It will be recalled that the McConnell opinion had indicated that the assumed lack of equity jurisdiction, coupled with the absence of a Public Utility Commission hearing in the case of a gas line condemnation, deprived the protestant of a forum unless he were permitted to test the validity of the taking on preliminary objections.) The court, in reconsidering the language of the McConnell case, said (p. 540) : '. . . Upon reconsideration of the statutory wording, we believe that our statement that the act expressly provides for PUC hearings on the necessity or propriety of the taking was too strong. All that the statute states is that no condemnation shall be effected until the PUC shall have found "that the service to be furnished by said company through the exercise of said power is necessary or proper for the service, accommodation, convenience, or safety of the public." We need not review the cases in which the PUC has decided questions on the scope and validity of a taking or delineate its exact power in this regard. What is important in this context is that even assuming that PUC has the power to decide such questions, the legislature has not made this the exclusive, mandatory procedure for their determination. At most this statutory remedy is

permissive or alternative. Therefore, appellants' claim that the existence of this power in the PUC means equity has no jurisdiction does not raise a jurisdictional question within the Act of 1925.'

"It is clear from the above language that equity has at the very least, alternative jurisdiction to determine the scope and validity of a taking and, accordingly, that if the Public Utility Commission does not provide a forum for the determination of these questions, equity will provide the forum. If this is the case, then the rationale underlying the majority opinion in the McConnell case no longer exists. Consequently, since, as pointed out by the dissenting opinion in McConnell, Section 901 of the Eminent Domain Code constitutes a 'clear and unmistakable legislative command' that the procedure to be followed in the case of a challenge to the scope or validity of a taking is that which obtained prior to the passage of the Code, issues dealing with the scope or validity of the taking cannot be raised by preliminary objections.[2] For this reason, the preliminary objections in the instant case were dismissed, and since no objections as to the sufficiency or adequacy of the bond were raised, the bond was approved."

---

[2] It is noted that Mr. Justice ROBERTS, who wrote the dissenting opinion in the *McConnell Appeal, supra,* did not join in the opinion of the court in *Redding v. Atlantic City Electric Company, et al., supra,* but merely concurred in the result.