Pennsylvania Power & Light Company, Appellant, *v.* Elmo Baldassari, Appellee.

Argued October 11, 1974, before Judges CRUMLISH, JR., KRAMER and WILKINSON, JR., sitting as a panel of three.

*Joseph L. Mullaney,* with him *Harvey Gelb* and *William C. Roeger, Jr.,* for appellant.

*Paul A. McGlone,* for appellee.

OPINION BY JUDGE WILKINSON, November 13, 1974:

This is an appeal from an award of damages in an eminent domain proceeding. The award was made by the court below sitting without a jury. The appellant challenges the court below on its findings with regard to three elements: (1) determination of the highest and best use of the appellee-condemnee's land; (2) nature of the estate condemned; and (3) values ascribed to the three segments of land involved.

Appellee-condemnee owned a tract of 603 acres which he testified he planned to develop into a recreational-residential area as a ski resort. Appellant-condemnor's Board of Directors, following appropriate procedures, condemned an easement 325 feet wide across the tract in question. The language of the condemning resolution, in pertinent part and accurately quoted by the court below, provided: "Note 3: 'RESOLVED, That the Company shall and hereby does condemn and appropriate easements *to the extent necessary* for said rights of way as aforementioned over and across said lands owned or reputed to be owned by: . . . said rights of way being *necessary* for this Company's corporate uses, for the construction, operation, renewal, replacement, relocation, addition to and maintenance of the facilities constituting the said transmission lines, including poles, tower, wires and all other necessary appurtenances for the transmission and/or distribution of electricity, on, under, over or across the said rights of way described in Appendix I, together with: (1) *the right, as often as necessary,* to cut down any trees or brush and to remove any buildings or other things from the said rights of way, (2) the right to cut and/or cut down any trees on the premises adjoining said rights of way which may endanger the safety of, interfere with the use of or be a menace to any facilities or structures which may now or in the future be maintained upon said rights of way, and (3) the right of ingress and

egress to, from, upon and over the said rights of way for the construction, operation and maintenance of said lines.' " (Emphasis added.)

The right of way ran in a generally northeast-southwest direction and created what the lower court appropriately treated as three segments of the original tract. The northwest segment contained 84 acres; the center segment, the property over which the easement was condemned, contained 35.8 acres; and the southeast segment was the balance of the property, being 483.2 acres. The Board of View awarded $42,000.00 from which award *both* parties appealed. Sitting without a jury and after extensive and conflicting testimony as to the highest and best use and as to the values, and with the benefit of viewing the property, the lower court awarded $104,705.00 damages.

The lower court found that the highest and best use of the property was as a recreational-residential area. Although the testimony of appellee-condemnee and his expert witnesses was contested, the court had clear support in the record for this finding. Appellant-condemnor relies heavily on *Shillito v. Metropolitan Edison Company,* 434 Pa. 172, 252 A. 2d 650 (1969). In that case, the Supreme Court sustained the court below when it held that although there had been evidence that the land could be used as a park, a racetrack, for industry, or for housing, there was no evidence that it would be or that there was any need for any of these uses. In the case before us, not only is there competent expert testimony of need, indeed there is competent testimony that the appellee-condemnee was actively and currently planning to so use the property at the time of the condemnation.

The lower court found as a fact that the taking "amounted to a total taking of the 35.8 acres." When the court used the term, "total taking," it meant just that, for it went on to ascribe no (zero dollar) value to

this 35.8 acres after the taking when it computed damages. We must disagree.

As quoted above, the condemning resolution of appellant-condemnor spelled out what we can construe only as an easement. The appellee-condemnee not only has the after value of the reversion if the easement is abandoned, which may not be of great value although certainly worth something, but he also has the right to use this center segment as access to and in conjunction with the two bordering segments and for all other purposes not inconsistent with appellant-condemnor's easement. Indeed, since the highest and best use has been determined to be a recreational-residential area, and the recreation is as a ski resort, it is hard to imagine a more practical use of the ownership of the fee in this center segment than as land on which to ski! There is much conflicting testimony of the conversations between the parties with regard to the use of this segment, but they are truly only conversations. Certainly the lower court would be justified in concluding from the record that approval might be required and might not be forthcoming for the traditional ski lift to be placed on the right of way, but certainly a ski tow would seem eminently practical.[1] This record will not support the lower court's statement that "any use of the land in the immediate area of such a construction would certainly be done by any rational person only on a serious emergency basis," or the statement that "these factors made the area almost useless as a ski area."

It is important to emphasize that while the condemnation resolution gives the right to the condemnor to

---

[1] Appellant-condemnor's Exhibit No. 17 is Rule 384 of the Department of Labor and Industry which indicates that chair lifts, gondola lifts and skimobiles are generally not approved beneath power lines; however, expressly the Rule does not apply to "tramways wherein the passengers are in contact with the ground or snow during the trip."

cut trees and brush and to remove buildings from the right of way, such rights are restricted to removing trees, brush and buildings to the extent necessary. This is a far cry indeed from an absolute right of removal.

Finally, appellee-condemnee places great weight in his argument that the taking is one in fee on the basis of Section 17D of the Act of June 20, 1968, P. L. 459, *amending* the Act of May 5, 1933, P. L. 364, 15 P.S. §1322 D (Supp. 1974-1975), which provides: "D. The estate in property condemned and taken by a public utility corporation shall be in fee simple absolute unless the resolution of condemnation shall specify a lesser estate. Whenever it shall be necessary for any public utility corporation to condemn by authority of subsection A of this section, the freehold in the surface of any tract of property, or the right to the exclusive possession for any indefinite period of the surface of any tract of property, the public utility corporation shall condemn a fee simple absolute and no less estate in such tract or the surface thereof."

As set forth in *Philadelphia Electric Co. v. Carr*, 4 Pa. Commonwealth Ct. 571, 287 A. 2d 917 (1972), this Section means just what it says. It provides that the public utility corporation must condemn a fee simple absolute title *unless* a lesser estate is specified. In the case before us, the lesser estate was expressly specified. Unless a lesser estate had been specified, it would not have been necessary to specify the right to remove trees, brush and buildings *as often as necessary.*

The decision of the court below, awarding damages in the amount of $104,705.00 and entry of judgment on the verdict, is reversed and the record is remanded for the lower court to review the testimony in light of this opinion and to enter a verdict and judgment consistent therewith.