West Penn Power Company, Appellant *v.* Edna Thomas, Raymond Hall and Leeman Hall, and/or Estate of Mary A. Hall, deceased, Appellees.

Argued May 9, 1980, before Judges MENCER, BLATT and MACPHAIL, sitting as a panel of three.

*Lee E. Whitmire, Jr.,* with him *Gregory K. Douglass, Whitmire & Verlihay,* for appellant.

*Samuel J. Orr, III, Wilson & Orr,* for appellees.

OPINION BY JUDGE MENCER, June 25, 1980:

The West Penn Power Company (West Penn) has appealed from an order of the Court of Common Pleas of Beaver County denying West Penn's motion for a new trial in an eminent domain case. A motion for a new trial is addressed to the discretion of the trial court, based on the circumstances of the particular case, and the court's action in granting or refusing such a motion will not be reversed in the absence of a manifest abuse of discretion or a clear error of law. *Beyrand v. Kelly,* 434 Pa. 326, 253 A.2d 269 (1969). In reviewing the grant or refusal of a new trial to determine whether there has been a manifest abuse of discretion, we must view all the evidence in the record. *Noel v. Puckett,* 427 Pa. 328, 235 A.2d 380 (1967).

We have carefully read and studied the record in this case. After a consideration of the facts and circumstances established therein, we conclude that the reasons given by the trial court in denying a new trial do justify its ruling and that the trial court was not guilty of a manifest abuse of discretion. Further, we do not perceive how we could better discuss and explain the justification for the trial court's decision than to set forth the following portion of the able opinion of President Judge Sawyer:

> On October 23, 1973, the defendant, West Penn Power Company, by resolution appropriated a right of way for the erection of a transmission line over 2.3 acres of the plaintiffs' farm (a 101-acre tract) situated in Center Township, Beaver County, Pennsylvania. On

April 18, 1975, the defendant petitioned for leave to set bond and on June 27, 1975, it petitioned the Court to have a Board of Viewers appointed in order that damages resulting from the condemnation could be assessed. After a hearing on September 14, 1976, the Board found that the date of the taking of the 2.3 acres was October 23, 1973, awarding damages of $13,000. The plaintiffs appealed and the case was tried before this Court. On January 17, 1979, the jury returned a verdict awarding damages to the plaintiffs in the amount of $32,000. The defendant has filed a motion for a new trial.

Most of defendant's averments of error revolve around the Court's permitting the plaintiffs' expert, Stuart Lindsay, to give his opinion of fair market value after having stated an improper and, according to the defendant, prejudicial definition of that term. Lindsay initially defined fair market value as 'the present worth of future benefits,' and allowed that this was the definition he preferred. He immediately went on to give another definition substantially similar to that set forth in [Section 603 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-603] (Code), stating 'that it is the price, estimated in terms of money, that a willing buyer would pay a willing seller at a given time for a parcel of real estate, with both parties being familiar with all of the uses to which this parcel of real estate could be put.'

Over the defendant's objection, Lindsay was permitted to give his opinion as to fair market value provided that it was based upon the second definition. Lindsay again defined fair market value as 'the price which a purchaser

is willing but not obligated to pay an owner who is willing but not obligated to sell, taking into consideration all of the uses to which the property is adapted and might in reason be applied.' He then gave his opinion. Finally, in our charge, we set forth in detail the definition of fair market value in accordance with Section 1-603.

The defendant contends that the first definition, that which Lindsay preferred, was so improper and prejudicial that it confused and misled the jury and also tainted Lindsay's subsequent opinion testimony so as to render it invalid. With this we cannot agree.

Lindsay explained that he considered the two definitions to be quite similar in meaning. It was not apparent that he included, intentionally or otherwise, some improper factor in the first definition which could so cloud his opinion that it would prevent him from rendering an opinion based upon the accepted legal definition. His testimony indicated familiarity with those factors to be weighed in assessing fair market value, and an intimate knowledge of the area in which the condemned property lies. Mr. Lindsay has previously testified before this Court and at hearings held by Boards of Views. We believe that he is qualified to give an expert opinion on real estate values and can find nothing in this case to indicate that his opinion was invalid. Nor do we find that his first definition confused or misled the jury. The correct definition was given several times by Mr. Lindsay, by the defendant's expert, and by the Court in its charge. Consequently, the jury should have been able to evaluate the evidence in the proper context.

Because the jury's award is in harmony with the evidence presented, we do not find it to be excessive. The defendant argues that the great disparity between the viewers' award and the jury's award, coupled with Lindsay's prejudicial opinion as to value, entitles the defendant to a new trial or a remittitur.

We have already determined that Lindsay's testimony was not prejudicial. Although the viewers' award may be appropriately considered on a motion for a new trial due to an excessive verdict, it is only a single factor and is secondary to a review of the evidence presented at trial. *E.g.*, Pennsylvania Department of Transportation v. McGuire, 399 A.2d 134 (Pa. Commw. Ct. 1979); Croop v. Pennsylvania Department of Transportation, 393 A.2d 41 (Pa. Commw. Ct. 1978). Mere disparity between the two awards is not grounds for a new trial. Tinicum Real Estate Holding Corp. v. Pennsylvania Department of Transportation, 480 Pa. 220, 389 A.2d 1034 (1978). A reasonable explanation for part of the discrepancy is that the viewers' award was based upon October 23, 1973, as the date of taking. Subsequently, this Court held that April 18, 1975, should be considered the date of taking. Due to the rapid development of Center Township during this period, as testified to, it is obvious that the value of the property would have increased appreciably. Thus, the damage caused by the condemnation would reflect a roughly proportional increase if based upon values as of the later date.

Both experts found the highest and best reasonable use of the subject property to be as a residential subdivision. In the opinion of the

plaintiffs' expert, the fair market value of the property prior to the taking was $355,000. Finding that the value after the taking was $309,500 damages amounted to $45,500. The defendant's expert testified to a value of $243,-400 prior to taking and $231,200 afterwards, damages equalling $12,200. From its award of $32,000, we gather that the jury weighed the evidence, accepting some but not all of that offered by the plaintiffs. After an independent review of all of the evidence, we find ample support for the jury's verdict.

Finally, the defendant maintains that this Court erred in ruling that the date of the taking was April 18, 1975, the date the bond was filed, as opposed to October 23, 1973, the date the defendant passed its resolution of appropriation. We note preliminarily that the condemnation procedures in this case are not governed by the Eminent Domain Code since the property interest appropriated for electric transmission lines is that of a right of way rather than a fee. 26 P.S. §1-901; Redding v. Atlantic City Electric Co., 440 Pa. 533, 269 A. 2d 680 (1970); Philadelphia Electric Co. v. Carr, 4 Pa. Commw. Ct. 571, 287 A.2d 917 (1972).

Under the Code, the time of taking is the date of condemnation. 26 P.S. §1-602(a). Condemnation is effected by the filing of a declaration of taking accompanied by appropriate security. *Id.* §1-402. At this point title passes, and the condemnor is entitled to possession subject to satisfying other Code provisions. *Id.* This is consistent with the general eminent domain procedure, which indicates that a taking occurs when title vests in the condemnor and

the right of entry or possession accrues. In a case such as this, legal condemnation depends upon, inter alia, the condemnor's filing of a bond. Act of April 29, 1874, P.L. 73, §41, as amended, 15 P.S. §3022 (1967); *see* McManus' Appeal, 5 Pa. Super. Ct. 65 (1897). Thus, the owner's constitutional right not to have his property taken absent the making or securing of just compensation is protected. Pa. Const. Art. I, §10; *see, e.g.,* Municipal Authority of Zelienople Appeal, 431 Pa. 306, 245 A.2d 451 (1969). Passage of a corporate resolution, therefore, cannot of itself constitute a legitimate condemnation.

Order affirmed.

### ORDER

AND Now, this 25th day of June, 1980, the order of the Court of Common Pleas of Beaver County, dated July 2, 1979, denying West Penn Power Company's motion for a new trial in the eminent domain case docketed at No. 702 of 1975 in said court, is hereby affirmed.