Fairview Water Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

628

Argued May 1, 1984, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR., CRAIG, MAC-PHAIL, DOYLE, BARRY and COLINS.

*Joseph J. Malatesta, Jr., Malatesta & Hawke,* for petitioner.

*Barbara S. Kahoe,* Assistant Counsel, with her, *Louise A. Knight,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*David J. Dulick,* for intervenor, Pennsylvania Power & Light Company.

OPINION BY JUDGE CRAIG, July 12, 1984:

Section 322 of the Business Corporation Law (the BCL)[1] mandates that, before a public utility corporation may exercise the power of eminent domain, it

---

[1] Act of May 5, 1933, P.L. 364, *as amended,* added by section 9 of the Act of August 27, 1963, P.L. 1381, 15 P.S. §1322.

must file an application with the Pennsylvania Public Utility Commission (PUC) for a finding and determination that the service which the utility plans to furnish is "necessary or proper for the service, accommodation, convenience or safety of the public."[2] In this appeal from the PUC's grant of a certificate of public convenience to Pennsylvania Power & Light Company (PP&L) under section 322, Fairview Water Company (Fairview) challenges the jurisdiction of the PUC to determine that PP&L had the power to condemn a right-of-way across Fairview's property for the retention, operation, and maintenance of an aerial electric transmission line.

This appeal therefore raises the following question of law: Where a public utility seeks to condemn a less-than-fee simple interest in property for the operation of an aerial electric transmission line, does the PUC, in ruling on the necessity-of-service application filed under section 322 of the BCL, also have jurisdiction to entertain challenges to the scope and validity of that condemnation?

In 1953, Fairview and PP&L entered into a 30-year lease which permitted PP&L to construct a 69 kV transmission line on and over 580 feet of Fairview's property. The line over Fairview's property represents the last four-mile section of PP&L's 33 mile Blooming Grove-Mount Pocono Line and serves as one of two supply lines to PP&L's Mount Pocono 69-12 kV area substation.

In 1976, Fairview notified PP&L that it would not renew the lease. PP&L then informed Fairview on May 10, 1982 that it intended to initiate eminent domain proceedings.

On December 12, 1982, PP&L filed an application with the PUC under the BCL "for a finding and de-

---

[2] 15 P.S. §1322.

termination that the service to be furnished by applicant through its proposed exercise of the power of eminent domain . . . is necessary or proper for the service, accommodation, convenience or safety of the public.'"[3]

The Administrative Law Judge (ALJ) made 70 findings of fact and seven conclusions of law, many specifically addressing the public need for the line in its present location. All parties to this appeal agree, however, that the ALJ did not confine his determination to the necessity-of-service issue; he also determined that PP&L's exercise of the power of eminent domain across Fairview's property was necessary and proper, finding that "[n]o other eminent domain proceedings are necessary to retain the existing line.'"[4] Accordingly, he ordered the PUC to issue PP&L a certificate of public convenience and directed PP&L to install a fence and plant vegetation across the right-of-way to inhibit access to the property.

The PUC adopted the ALJ's initial decision and his ruling on exceptions. Fairview has asked this court to vacate Findings of Fact 40 through 70 and Conclusions of Law 2 through 7 on the ground that they impermissibly address scope and validity issues. Fairview does not challenge the necessity-of-service determination.

Electric utility corporations, like PP&L, can trace their condemnation powers to two discrete statutory provisions, section 322 of the BCL and section 4 of the Act of May 8, 1889, P.L. 136, *as amended,* added by

---

[3] In the application, PP&L also stated that it "desire[d] to enter upon, use, take and appropriate a portion of said [Fairview] land to the extent authorized by law and necessary for the corporate use as a right-of-way for the continued operation and maintenance of its . . . electric line. . . ."

[4] Finding of Fact No. 62.

section 1 of the Act of May 21, 1921, P.L. 1057, 15 P.S. §3272(b) ; *cf. Wilson v. Western Pennsylvania Water Co.*, 60 Pa. Commonwealth Ct. 312, 430 A.2d 1247 (1981) (water companies trace power to BCL §322 and section 34 of corporation act of 1874[5]). The two provisions are similar in many respects and both require that public utilities receive a necessity-of-service determination from the PUC before exercising the power of eminent domain.

A condemnee must be given an opportunity to challenge the legality of a taking. *McConnell Appeal*, 428 Pa. 270, 272, 236 A.2d 796, 798 (1968) ; *Wilson*, 60 Pa. Commonwealth Ct. at 317, 430 A.2d at 1249. Once the PUC has made a necessity-of-service determination, in what forum may the condemnee challenge the legality of a taking pursued by the utility to implement its providing of the service?

When an electric utility condemns an interest in fee under both statutes, a condemnee's exclusive remedy is statutory, under the Eminent Domain Code (Code).[6] *Redding v. Atlantic City Electric Co.*, 440 Pa. 533, 269 A.2d 680 (1970) (condemnation by electric utility under Act of 1889) ; *Philadelphia Electric Co. v. Carr*, 4 Pa. Commonwealth Ct. 571, 580, 287 A.2d 917, 921-22 (1972) (condemnation by electric utility under section 322 of the BCL) ; 15 P.S. §1322 (H) ; *Cf. Wilson*, 60 Pa. Commonwealth Ct. at 316, 430 A.2d at 1249 (condemnation by water company). The Code is not applicable, however, when a condemnee

---

[5] Act of April 29, 1874, P.L. 73, *as amended*, 15 P.S. §3021—3023. Sections 3021—3023 were repealed, except insofar as they relate to the condemnation of rights-of-way or easements for occupation by water, electric, gas, oil and/or petroleum products, telephone or telegraph lines used directly or indirectly in furnishing service to the public.

[6] Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§1-101—1-901.

challenges the taking of an easement or right-of-way. *Id.*

In *Redding,* as a basis for holding that a condemnee had posed no jurisdictional question when an equity court had dismissed preliminary objections to the exercise of its own jurisdiction, the Supreme Court observed that equity has, at the very least, alternative jurisdiction to determine the scope and validity of an electric utility's condemnation of a less-than-fee interest under the Act of 1889. As to the jurisdiction of the PUC, *Redding* stated:

> We need not review the cases in which the PUC has decided questions on the scope and validity of a taking or delineate its exact power in this regard. What is important in this context is that even assuming the PUC has the power to decide such questions, the legislature has not made this the exclusive, mandatory procedure for their determination. At most this statutory remedy is permissive or alternative.

440 Pa. at 540, 269 A.2d at 684.

Of course, by determining that equity has *alternative* jurisdiction, the Supreme Court necessarily implied that the PUC was indeed the other forum for pursuing scope and validity challenges to a less-than-fee taking under the Act of 1889. *Accord Wilson,* 60 Pa. Commonwealth Ct. at 318 n. 5, 430 A.2d at 1250 n. 5.

In a per curiam decision adopting the opinion of Common Pleas Court Judge ROBERT MOUNTENAY, we relied on *Redding* as a basis for affirming the dismissal of a condemnee's exceptions and preliminary objections to the approval of a condemnation bond filed by an electric utility; we agreed that, for a less-than-fee condemnation under section 322 of the BCL, the Eminent Domain Code was inapplicable and

equity had jurisdiction, noting the PUC as a possible alternative forum. *Carr,* 4 Pa. Commonwealth Ct. at 580, 287 A.2d at 921.

In *Wilson,* where we held that an equity court's dismissal of a complaint challenging a water company's taking of an easement was improper because equity was the only forum available, we similarly observed that in "Redding . . . it was possible that the validity of a condemnation might be determined at the statutorily-required hearing before the Public Utility Commission. . . ." 60 Pa. Commonwealth Ct. at 318, 430 A.2d at 1250.

Fairview argues that these cases have never expressly held that the PUC has jurisdiction to entertain scope and validity challenges to a utility's condemnation of a less-than-fee interest; they have held only that equity has jurisdiction. Moreover, Fairview contends that, even if we were to conclude that Pennsylvania courts have resolved the issue of PUC jurisdiction when a public utility invokes its power of condemnation under the Act of 1889, we have never had occasion to determine what effect the following language in section 322(C) may have upon the exercise of that jurisdiction under the BCL. That language, italicized below, provides:

C. The powers conferred by subsection A of this section may be exercised to condemn property outside the limits of any line of railroad, street railway, street, highway, water or other public way or place for the purpose of erecting poles or running wires or other aerial electric, intrastate aerial telephone or intrastate aerial telegraph facilities only after the Pennsylvania Public Utility Commission, upon application of such public utility corporation, shall have found and determined, after notice and opportunity

for hearing that the service to be furnished by said corporation through the exercise of said power is necessary or proper for the service, accommodation, convenience or safety of the public. *The power of the public utility corporation to condemn the subject property or the procedure followed by it shall not be an issue in the commission proceedings held hereunder* and notwithstanding section 1111 of the Public Utility Law neither the Commonwealth Court, the Court of Common Pleas of Dauphin County nor any other court of common pleas shall entertain any proceeding questioning the jurisdiction of the commission under this subsection. A final order of the commission approving or denying an application under this subsection, including an order involving a question of jurisdiction hereunder, may be made the subject of an appeal in the manner provided by law. (Emphasis added.)

15 P.S. §1322(C).

On the basis of that language, Fairview contends that, once the PUC has rendered a favorable necessity-of-service determination under section 322, only a court sitting in equity has jurisdiction to entertain scope and validity questions. We must disagree.

The clause which limits the PUC's inquiry into "[t]he power of the public utility to condemn the subject property or the procedure followed by it" does not divest the PUC of jurisdiction to entertain scope and validity challenges to a less-than-fee simple taking under section 322. Rather, the limiting language merely provides that the PUC may not consider these issues "in the commission proceedings held hereunder," *i.e.*, during the preliminary necessity-of-

service hearing. Indeed, the second half of the pertinent sentence, which prohibits a party from taking an interlocutory appeal to challenge PUC jurisdiction during the necessity-of-service phase, also indicates only that the General Assembly did not want jurisdictional issues to cloud the preliminary determination.

Where, then, does statutory authority reside for the PUC's exercise of scope and validity jurisdiction? By implication, it rests in the final sentence of subsection (C), which provides that a "final order . . . approving or denying an application under this subsection, *including an order involving a question of jurisdiction hereunder,* may be made the subject of an appeal. . . ." (Emphasis added.) By granting the right to appeal "a question of jurisdiction hereunder" in the final sentence of subsection (C) after denying a party the right to question jurisdiction in the preceding sentence, the General Assembly apparently contemplated that the PUC should address a utility's "power . . . to condemn . . . or the procedure followed by it" sometime after the preliminary necessity-of-service determination.

Although our court in *Carr* and *Wilson* did not have occasion to address the meaning of section 322 (C)'s penultimate and final sentences, our holding here accords with the views previously indicated by those panel opinions of our court: When a utility seeks to condemn a less-than-fee interest under the BCL, the PUC provides a condemnee with a forum for challenging scope and validity issues.

We also note that our reading of section 322 advances the cause of administrative and judicial economy by recognizing that the considerations relevant to a necessity-of-service determination logically overlap the factors which an equity court would consider

636

in evaluating the scope and validity of the condemnation.

Accordingly, we affirm.

ORDER

Now, July 12, 1984, the order of the Pennsylvania Public Utility Commission, No. A-00104457, entered September 22, 1983, is affirmed.