622 A.2d 408

**In re Philadelphia Electric Co. Right of Way: Taking of Ground of Carl Giesler and Anne Giesler, his wife, in the Borough of Chester Heights.**

**Appeal of Carl GIESLER and Anne Giesler, his wife, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 1993.

Decided March 5, 1993.

Peter A. Mardinly, for appellants.

Mark Kehoe, for appellees.

Before PALLADINO and PELLEGRINI, JJ., and WRIGHT, Senior Judge.

PELLEGRINI, Judge.

Carl and Ann Giesler (Giesler) appeal the order of the Court of Common Pleas of Delaware County (trial court) awarding compensation to them for property taken by Philadelphia Electric Company (PECO) for an electric transmission line.

On October 24, 1977, PECO adopted resolutions appropriating a 1.9 acre right-of-way on the Giesler property of 20 acres for high voltage electric transmission lines. The Pennsylvania Public Utility Commission (PUC) granted Certificates of Public Convenience for the acquisition of the right-of-way on April 10, 1981. PECO then acquired a bond to secure compensation and offered Giesler $4,500 for the property. Giesler refused the offer. On May 21, 1984, PECO filed a petition for

approval of a condemnation bond and it was approved by the court of common pleas on June 22, 1984.

On October 1, 1984, PECO entered the Giesler property to construct towers and power lines. On April 11, 1985, Giesler filed a petition to appoint a board of viewers. The viewers awarded Giesler damages of $18,050, plus counsel fees. Giesler filed an appeal of the viewers' report with the trial court, and the case was consolidated with the appeal of James and Mary Miller.[1] The trial court determined on a motion in limine that the date of taking was April 10, 1981, the date of the PUC grant of Certificate of Public Convenience. Based on that date, the jury awarded Giesler $15,000.

At PECO's request at trial, the court barred testimony from Giesler's expert appraiser about the adverse effect on valuation from the public perception that electric transmission lines may cause health problems. The trial court refused the testimony, because the existence of a health hazard was speculation within the scientific community.

Giesler filed a motion for post-trial relief, asserting that the court erred in setting the date of taking and a motion for summary judgment on delay damages. As to the summary judgment motion, the trial court determined that the date from which delay damages would be assessed was October 1, 1984, the date PECO entered onto the property. The trial court also dismissed the motion for post-trial relief and approved the stipulations of the parties concerning delay damages. Giesler then appealed to this court, but by order dated April 24, 1989, we dismissed the appeal as untimely. However, the Supreme Court reversed that order of the Commonwealth Court and remanded the case for a decision on the merits. 531 Pa. 540, 614 A.2d 238.

■ Although the Eminent Domain Code governs most condemnations, it is inapplicable to condemnations by public utilities. At the time of the condemnation proceedings in this

---

1. The Miller's case has been a companion to this case throughout the appeal proceedings. *See In re Philadelphia Electric Co. Right of Way, Taking of Ground of James E. Miller and Mary C. Miller,* No. 2124 C.D.1988 (J. Pellegrini, filed March 5, 1993).

action, a public utility's authority to take private property was found in Section 322 of the Act of May 5, 1933, P.L. 364, *as amended,* added by Section 9 of the Act of Aug. 27, 1963, P.L. 1381, *formerly* 15 P.S. § 1322, repealed by the Act of Dec. 21, 1988, P.L. 1444, and procedural provisions governing the condemnation were Sections 41–43 of the Act of April 29, 1874, P.L. 73, *as amended, formerly* 15 P.S. §§ 3021–3023, repealed by the Act of Dec. 21, 1988, P.L. 1444.[2]

■ Giesler first contends that the trial court erred in setting the date of taking as the date the PUC granted PECO a Certificate of Public Convenience. Giesler argues that the taking was not complete until the court approved the bond. We agree. The Constitution of the Commonwealth of Pennsylvania requires that just compensation be paid or secured *before* property is taken. Pa. Const. Art. 1, § 10; Art. 10, § 4.[3]

Section 42, *formerly* 15 P.S. § 3022, established the method by which the public utility could pay or secure a bond in accordance with the constitutional mandate:

In all cases where the parties cannot agree upon the amount of damages claimed ... the corporation shall tender a bond, with at least two sufficient sureties, to the party claiming or entitled to any damages ... in case the party or parties claiming damages refuse or do not accept the bond as tendered, the said corporation shall then give the party a written notice of the time when the same will be presented for filing in court, and thereafter the said corporation may

2. When Section 322, *formerly* 15 P.S. § 1322 and Sections 41–43, *formerly* §§ 3021–3023 were repealed, the provisions were incorporated into the current statute 15 Pa.C.S. § 1511, effective October 1, 1989.

3. Article 1, Section 10 of the Pennsylvania Constitution states: "nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." Our Constitution also provides, in Article 10, Section 4: Municipal and other corporations invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, and compensation shall be paid or secured before the taking, injury or destruction.

present said bond to the court of common pleas of the county where the lands, streams, water or materials are, and if approved, the bond shall be filed in said court for the benefit of those interested....[4]

Because there is no evidence that PECO attempted to tender the bond to Giesler, the statute required the utility to present the bond to the court for approval. In *West Penn Power Company v. Thomas*, 52 Pa.Commonwealth Ct. 347, 352, 416 A.2d 578, 581 (1980), we held that the date of taking of a right-of-way by a public utility was the date the utility filed a bond with the court. We stated that taking occurs when title vests in the condemnor and the right of entry or possession accrues. The passage of a corporate resolution is inadequate because, we held, it does not protect the owner's constitutional right to have just compensation secured before the property is taken. *Id.* PECO contends that *West Penn* is factually distinguishable because there was no mention of PUC approval of the taking. Although the opinion does not mention PUC approval, such action was a statutory requirement[5] and we presume that it occurred as required. Moreover, the opinion did not need to address PUC approval because such action went no further than the corporate resolution to secure just compensation for the condemnee, and we held that taking could not be complete until just compensation was secured.

Until PECO secured court approval, all the actions of a corporation up to that point—the resolution, agency approval, and securing of a bond—did not complete the taking, because compensation was not secured in accordance with the statutory procedure. Only upon court approval and filing of the bond was compensation secured in compliance with the constitution-

---

4. The current statute establishes when the taking is complete: "Upon entry by the court of an order approving the bond and directing that it be filed, the title that the corporation acquires in the right-of-way or easement described in the resolution of condemnation shall pass to the corporation and the corporation shall be entitled to possession." 15 Pa.C.S. § 1511(g)(2)(iii).

5. Section 4 of the Act of May 8, 1889, P.L. 136, *as amended*, as added by Section 1 of the Act of May 21, 1921, P.L. 1057, *formerly* 15 P.S. § 3272, repealed by Dec. 21, 1988, P.L. 1444.

al mandate. Accordingly, in this case, just as in *West Penn*, the date of taking was the date the court approved the bond presented to it by PECO, June 22, 1984.

█ Giesler also contends that the trial court erred in determining that delay damages should be calculated from October 1, 1984, the date of PECO's entry onto the property. Although the Eminent Domain Code does not apply to public utility condemnations, at the time of the condemnation proceedings, the damages provisions of the Code did apply.[6] The right to delay damages is set forth in Section 611 of the Code, 26 P.S. § 1–611:

> The condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation, ... Compensation for delay in payment shall, however, be paid at the rate of six per cent per annum from the date of relinquishment of possession of the condemned property by the condemnee, or if the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation.

Giesler argues this right-of-way fits within the exception for condemnations where possession is not required to effectuate it, because it is like an easement where the property owner never relinquishes possession and the right to use is complete as of the date of taking. In *County of Bucks v. .800 Acres of Land*, 32 Pa.Commonwealth Ct. 448, 379 A.2d 903 (1977), we held that although there are situations, such as certain easements, where one could imagine that possession is not required to effectuate the taking, if possession will occur to effectuate the taking, delay damages are not proper until possession. In that case, the county took easements to occasionally flood the property in constructing a dam, and because the just compensation was paid before the land was flooded,

---

**6.** Section 901 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. § 1–901, provided at that time that Article VI of the Code, addressing just compensation and damages, applied to public utility condemnations.

which would effectuate the condemnation, the property owners were not entitled to delay compensation.[7]

Similarly, in this case, possession was required to effectuate the condemnation, that is, PECO had to enter the land to erect the electric transmission lines in order to utilize it's right-of-way. Although Giesler is correct that a right-of-way is not a fee simple and is like an easement, Section 611 of the Code does not base the determination of delay damages on what type of property right is taken, but on whether possession is required to effectuate it.

■ Giesler finally contends that the trial court erred in barring their expert appraiser from testifying about the adverse effect on valuation due to the public perception that electric transmission lines may cause health problems. Giesler argues that this testimony specifically falls within Section 705(1) of the Code, 26 P.S. § 1–705(1),[8] because the expert was not testifying that the scientific evidence was conclusive or true, but that the information was known to the public and affected individual's willingness to purchase such property.

Although at the time the testimony was offered, the underlying scientific evidence was not conclusive and a scientific opinion that electric transmission lines caused health problems would be speculative, the appraiser's testimony would be

7. Giesler cites *Department of Transportation v. Dixon Ticonderoga*, 93 Pa.Commonwealth Ct. 53, 500 A.2d 938 (1985), for the proposition that when an easement is taken, delay damages accrue from the date of taking rather than possession. This court in *Dixon* remanded for a hearing to determine the date of possession by the condemnor, so that delay damages could be calculated for the property taken in fee simple, and we noted that some property was taken as an easement and that "under the rationale of *County of Bucks* ", those damages accrue from the date the declaration of taking was filed. We disagree with Giesler's reading of *Dixon* because it relies directly on *County of Bucks* which held that certain easements, but not all, did not require possession to effectuate it, and in those cases, damages accrue from the date of taking.

8. Section 705(1) of the Code provides:
A qualified valuation expert may, on direct or cross-examination, state any or all facts and data which he considered in arriving at his opinion, whether or not he has personal knowledge thereof, and his statement of such facts and data and the sources of his information shall be subject to impeachment and rebuttal.

based on the fact that the information about possible health problems was available and created an apprehension so that some individuals would refuse to buy the property. Such environmental and safety apprehensions affect the valuation of property and are proper considerations for an appraiser. We agree with the statement of the federal district court in *United States v. Easement and Right-of-Way*, 249 F.Supp. 747, 750 (W.D.Kentucky, 1965): "Apprehension of injuries to person or property by the presence of power lines on the property may be taken into consideration insofar as the line affects the market value of the land. In the opinion of the Court, the apprehension of such danger constitutes an element of damage."

For the stated reasons, the order of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

## ORDER

AND NOW, this 5th day of March, 1993, the order of the Court of Common Pleas of Delaware County, dated July 28, 1988, No. 84–6163, is reversed and the case is remanded for further proceedings.

Jurisdiction is relinquished.