In Re: Condemnation by     :
Sunoco Pipeline L.P. of     :
Permanent and Temporary     :
Rights of Way for the     :
Transportation of Ethane,     :
Propane, Liquid Petroleum     :
Gas, and other Petroleum     :
Products in the Township of     :
Heidelberg, Lebanon County,     :
Pennsylvania, over the Lands     :
of Homes for America, Inc.     :
    :   No. 565 C.D. 2016
Appeal of: Homes for America, Inc.   :   Submitted: September 30, 2016


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                FILED: May 24, 2017


Homes for America, Inc. (Condemnee) appeals from the Lebanon County Common Pleas Court's (trial court) March 24, 2016 order overruling its Preliminary Objections to Sunoco Pipeline L.P.'s (Sunoco) Declaration of Taking (Declaration).[1]  Condemnee contends that the trial court erred because Sunoco's Mariner East 2 Project is not an intrastate and interstate pipeline dually regulated by the Pennsylvania Public Utility Commission (PUC) and the Federal Energy

---

[1] Appeals filed by Gerald V. and Katherine M. Thomas (collectively, Thomas) (Pa. Cmwlth. No. 563 C.D. 2016) and Heath K. and Brenda H. Nell (collectively, Nell) (Pa. Cmwlth. No. 564 C.D. 2016) were consolidated with Condemnee's appeal on April 26, 2016.  However, because Thomas and Nell have since resolved their disputes with Sunoco, this Court discontinued their appeals by October 16, 2016 order.  Only Condemnee's appeal remains active.

Regulation Commission (FERC), Sunoco is not a public utility, Sunoco does not have eminent domain power, and Sunoco's Declaration is barred by the collateral estoppel doctrine.[2]

This Court *en banc* decided a majority of Condemnee's issues in *In re Condemnation by Sunoco Pipeline, L.P.*, 143 A.3d 1000 (Pa. Cmwlth. 2016), *petition for allowance of appeal denied*, (Pa. Nos. 571, 572, 573 MAL 2016, filed December 29, 2016) (*Sunoco I*). After careful review of the record in this case, and in accordance with *Sunoco I*, we affirm the trial court's order.

## I. Background

On August 5, 2015, Sunoco filed the Declaration to condemn permanent and temporary easements across Condemnee's property located on South Canaan Grove Road, Newmanstown, Heidelberg Township, Lebanon County (Property) for the construction, operation and maintenance of Sunoco's Mariner East 2's pipelines. *See* Reproduced Record (R.R.) at 749a-767a, 880a-885a.

Condemnee filed Preliminary Objections to the Declaration in accordance with Section 306 of the Eminent Domain Code,[3] 26 Pa.C.S. § 306, alleging: Sunoco does not have condemnation authority (Objection 1); Sunoco's corporate resolution does not authorize Sunoco to use eminent domain for the intrastate pipeline (Objection 2); Sunoco is collaterally estopped from asserting eminent domain power for Mariner East 2 after it was denied in *Loper v. Sunoco Pipeline, L.P.* (C.P. York No. 2013-SU-004518-05, filed February 24, 2014)

---

[2] In its Statement of Questions Involved set forth in Condemnee's brief filed with this Court, Condemnee's first issue is whether the trial court erred in finding that Mariner East 2 is both an interstate and intrastate service. Condemnee's second issue is whether Mariner East 2 may be dually regulated by the PUC and FERC. Because both issues involve the same analysis, we combined those issues as Issue 1 herein.

[3] 26 Pa.C.S. §§ 101-1106.

2

(Objection 3); the Declaration falsely represents Mariner East 2 as an intrastate pipeline (Objection 4); Sunoco seeks approval for two pipelines despite that FERC only approved one (Objection 5); and, Pennsylvania law prohibits Sunoco's attempt to obtain eminent domain power under the Pennsylvania Business Corporation Law of 1988 (BCL)[4] without a FERC Certificate of Public Convenience (CPC) (Objection 6).[5] *See* R.R. at 920a-973a. Sunoco opposed Condemnee's Preliminary Objections. *See* R.R. at 974a-993a.

The trial court conducted a hearing on November 30, 2015. *See* R.R. at 1269a-1453a. On March 24, 2016, the trial court ordered Condemnee's Preliminary Objections overruled, as follows:

> 1. The Mariner East 2 Pipeline will provide both interstate and intrastate service for ethane, propane, and other petroleum products in the Commonwealth.
>
> 2. Such pipeline service is dually-regulated, with [FERC] having the authority to regulate interstate service and the [PUC] having the authority to regulate intrastate service.
>
> 3. Since [Sunoco] is regulated by the [PUC] for the Mariner East 2 Project, it meets the definition of a public utility providing public utility service under the Pennsylvania [BCL].
>
> 4. As a public utility providing public utility service under the [BCL], [Sunoco] has the power of eminent domain.

---

[4] 15 Pa.C.S. §§ 1101-9507. Section 1511(a)(2) of the BCL, 15 Pa.C.S. § 1511(a)(2), provides that "public utility corporations" may exercise the power of eminent domain to condemn property for the transportation of, *inter alia*, natural gas and petroleum products. Section 1103 of the BCL, 15 Pa.C.S. § 1103, defines public utility corporation as "[a]ny domestic or foreign corporation for profit that . . . is subject to regulation as a public utility by the [PUC] or an officer or agency of the United States . . . ." FERC is an agency of the United States that may regulate an entity as a public utility under this section.

[5] Condemnee also objected to the sufficiency of Sunoco's bond; however, on December 9, 2015, Sunoco posted a bond agreeable to Condemnee. *See* R.R. at 1469a-1474a. Accordingly, Condemnee's seventh objection was rendered moot. *See* Trial Court Op. at 12.

5. The doctrine of collateral estoppel does not apply to compel a different result.

6. The bonds posted by [Sunoco] in response to our Order of December 15, 2015 are adequate to cover the damages anticipated by Condemnee[].

7. In light of the above, the Preliminary Objections . . . are [OVERRULED] in their entirety.

Condemnee Br. App. A, Trial Ct. Order. Also on March 24, 2016, the trial court filed an opinion in support of its order. *See* Condemnee Br. App. A, Trial Ct. Op. On April 8, 2016, Condemnee appealed to this Court.[6]

## II. <u>Analysis</u>

### A. Dual Regulation

Condemnee first argues that the trial court erred by finding that Mariner East 2 is both an intrastate and interstate pipeline subject to the PUC's regulation. Condemnee also contends that the trial court erred by finding that Mariner East 2 service is dually regulated by the PUC and FERC, because no law supports dual regulation, and Section 104 of the Public Utility Code (Code),[7] 66 Pa.C.S. § 104, prohibits the PUC's regulation of interstate commerce. We disagree.

The record made before the trial court in this matter is nearly identical to the one made in *Sunoco I*. Both contain the same Sunoco witness testimony, Mariner East Project exhibits and PUC orders. Therefore, this Court's thorough and exhaustive analysis and summary of Sunoco's background in *Sunoco I* is relevant to the Declaration filed in this case.

---

[6] "In an eminent domain case disposed of on preliminary objections this Court is limited to determining if [the trial court's] necessary findings of fact are supported by competent evidence and if an error of law or an abuse of discretion was committed." *Sunoco I*, 143 A.3d at 1014 n.17.

[7] 66 Pa.C.S. §§ 101-3316.

### 1. Regulation of Sunoco as a Public Utility

Sunoco has operated as a Pennsylvania public utility since 2002, when it received the PUC's approval for the transfer, merger, possession, and use of all assets of the Sun Pipe Line Company (Sun) and of the Atlantic Pipeline Corporation (Atlantic), both of which were public utilities subject to the PUC's jurisdiction. *See* R.R. at 769a-772a. Accordingly, the PUC issued a CPC (2002 CPC) authorizing Sunoco "to transport petroleum products in the former service territory of Sun and Atlantic[,]" between Delmont, Westmoreland County, Pennsylvania and Twin Oaks, Delaware County, Pennsylvania, which includes Lebanon County. R.R. at 773a; *see also* R.R. at 773a-776a. In granting the 2002 CPC, the PUC declared that the transfer of assets to Sunoco "provides an affirmative public benefit" (R.R. at 774a) and that "the granting of [Sunoco's] application is necessary or proper for the service, accommodation, convenience and safety of the public." R.R. at 769a.

### 2. The Mariner East Project

Sunoco planned the Mariner East Project to transport natural gas liquids (NGLs),[8] such as propane, ethane, and butane within the service territory authorized

---

[8] According to the United States Energy Information Administration:

> [NGLs] are hydrocarbons—in the same family of molecules as natural gas and crude oil, composed exclusively of carbon and hydrogen. Ethane, propane, butane, isobutane, and pentane are all NGLs . . . NGLs are used as inputs for petrochemical plants, burned for space heat and cooking, and blended into vehicle fuel . . . .

> The chemical composition of these hydrocarbons is similar, yet their applications vary widely. Ethane occupies the largest share of NGL field production. It is used almost exclusively to produce ethylene, which is then turned into plastics. Much of the propane, by contrast, is burned for heating, although a substantial amount is used as petrochemical feedstock . . . .

by the 2002 CPC. *See* R.R. at 755a; *see also In re Condemnation of Sunoco Pipeline, L.P.* (Pa. Cmwlth. No. 220 C.D. 2016, filed September 2, 2016);[9] *Sunoco I*, 143 A.3d at 1007-11. The Mariner East Project consists of multiple phases, and the overall goal is to relieve the oversupply of NGLs in the Marcellus and Utica Shale basins and to remedy propane shortages in Pennsylvania and the Northeast. *See* R.R. at 755a.

Sunoco initially intended the Mariner East Project to prioritize interstate service. The first phase, known as Mariner East 1, was designed to transport NGLs from the Marcellus and Utica basins east to the Marcus Hook Industrial Complex (MHIC) located in both Delaware County and Claymont, Delaware. *See* R.R. at 755a. However, the record indicates that Sunoco also contemplated the *intrastate* transportation of propane for delivery to Pennsylvania customers. *See* R.R. at 755a. During the completion of Mariner East 1, Sunoco experienced a significant increase in demand for intrastate shipments of propane, driven by local consumer demand. *See* R.R. at 755a. The record further reflects that harsh winter conditions experienced during the 2013-14 winter season, combined with a pipeline infrastructure deficit, led to propane shortages and changing market conditions. *See* R.R. at 755a. Because of the circumstances, Sunoco accelerated its plans to provide intrastate shipments of propane, in addition to interstate shipments of propane and ethane, through the Mariner East Project. *See* R.R. at 755a.

This increased focus on intrastate shipments was the impetus for the second phase of Sunoco's Mariner East Project (Mariner East 2). *See* R.R. at 761a-

United States Energy Information Administration, Today in Energy, April 20, 2012, available at http://www.eia.gov/todayinenergy/detail.cfm?id=5930&src=email (last visited May 20, 2016).

[9] We acknowledge that this Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). We reference this Court's *In re Condemnation of Sunoco Pipeline, L.P.* (Pa. Cmwlth. No. 220 C.D. 2016, filed September 2, 2016) decision herein for its persuasive value.

762a. Mariner East 2 will consist of pipelines with access points in Ohio, West Virginia, and Pennsylvania. *See* R.R. at 762a. Product will be placed into a pipeline (on-ramps), and there will be multiple exit points within Pennsylvania where product will be removed from the pipeline (off-ramps). *See* R.R. at 762a. Mariner East 2 generally will run parallel to the Mariner East 1 line. *See* R.R. at 763a. The Mariner East Project (through Mariner East 1 and Mariner East 2) will transport petroleum products in Sunoco's certificated areas as an integrated service.[10]

### 3. PUC Orders and Tariffs

The record contains references to Sunoco initiating several PUC proceedings when its focus for the Mariner East Project moved from *interstate* to *intrastate* transportation of NGLs after the winter of 2013-14. *See* R.R. at 754a-767a. These proceedings, and the resulting PUC orders, include the following relevant actions:

- July 24, 2014 order – the PUC reaffirmed Sunoco's authority to transport petroleum products between Delmont, Westmoreland County, and Twin Oaks, Delaware County (*see* R.R. at 786a-796a);

---

[10] The PUC's August 21, 2014 Order states:

> Subject to continued shipper interest, Sunoco intends to undertake a second phase of the Mariner East [P]roject, which will expand the capacity of the project by constructing: (1) a 16[-]inch or larger pipeline, paralleling its existing pipeline from Houston, PA to the Marcus Hook Industrial Complex and along much of the same route, and (2) a new 15 miles of pipeline from Houston, PA to a point near the Pennsylvania-Ohio boundary line. This second phase, sometimes referred to as 'Mariner East 2', will increase the take-away capacity of natural gas liquids from the Marcellus Shale and will enable Sunoco to provide additional on-loading and off-loading points within Pennsylvania for both intrastate and interstate propane shipments.

R.R. at 806a-807a.

- August 21, 2014 order – the PUC approved a tariff for Sunoco's west-to-east intrastate movement of propane from Mechanicsburg to Twin Oaks (*see* R.R. at 798a-802a);

- August 21, 2014 order – the PUC granted Sunoco a CPC authorizing it to provide intrastate transportation service of petroleum products in Washington County, which expanded the service territory in which Sunoco is authorized to provide its Mariner East service (*see* R.R. at 805a-809a);

- October 29, 2014 order – the PUC reaffirmed that "Sunoco has been certificated as a public utility in Pennsylvania . . . , and the existence of [PUC o]rders granting the [CPCs] to Sunoco is *prima facie* evidence of the facts therein, including that Sunoco is a public utility under the Code." (R.R. at 861a; *see also* R.R. at 822a-878a).

- January 15, 2015 order – the PUC approved a tariff for Sunoco's west-to-east intrastate movement of propane, reflecting a new origin point of Houston, Washington County (*see* R.R. at 811a-815a); and,

- March 26, 2015 order – the PUC approved a supplemental tariff for intrastate shipments from Delmont, Westmoreland County to Twin Oaks, Delaware County (*see* R.R. at 817a-820a).

*See Sunoco I; see also In re Condemnation of Sunoco Pipeline, L.P.* (Pa. Cmwlth. No. 220 C.D. 2016, filed September 2, 2016).

The *Sunoco I* Court also "provide[d] some . . . background information on the nature of the interrelationships between [sic] Sunoco, [the] PUC and [FERC,]" as follows:

> Both FERC and [the] PUC regulate the shipments of natural gas and petroleum products or service through those pipelines, and not the actual physical pipelines conveying those liquids. **FERC's jurisdiction is derived from the**

8

**Interstate Commerce Act (ICA)**[11] **and applies to interstate movements, while the Code and [the] PUC's jurisdiction apply to intrastate movements. This jurisdiction is not mutually exclusive**. . . .

*Sunoco I*, 143 A.3d at 1004 (original bold text emphasis, footnotes and original record citations omitted; bold text emphasis added).

> [I]t is [the] PUC, and not FERC, that has authority to regulate intrastate shipments. Similarly, . . . pipeline service operators in Pennsylvania, such as Sunoco, can be, and frequently are, simultaneously regulated by both FERC and [the] PUC through a regulatory rubric where FERC jurisdiction is limited only to interstate shipments, and [the] PUC's jurisdiction extends only to intrastate shipments. . . .
>
> . . . .
>
> The record substantiates that the pipeline system previously provided and currently provides interstate and intrastate service on the same pipelines. . . . [**The**] **PUC has regulated Sunoco's intrastate pipeline transportation of petroleum products and refined petroleum products since 2002, and FERC has regulated Sunoco's interstate service of the same products on the same pipelines**. . . .

*Sunoco I*, 143 A.3d at 1005-06 (emphasis added).

Therefore, when the condemnees in *Sunoco I* made the identical dual regulation arguments,[12] this Court determined, based on the PUC orders related to the Mariner East Project, FERC's decision in *Amoco Pipeline, Co.*, 62 F.E.R.C. ¶ 61119, at 61803-61804, 1993 WL 25751, at *4 (Feb. 8, 1993) (finding that "the commingling of oil streams is not a factor in fixing jurisdiction under the ICA"), and other related authority, "that **Sunoco's CPCs apply to** both Mariner East 1 service and **to Mariner East 2 service**, as it is an authorized expansion of the same service."

---

[11] 42 U.S.C. § 60502.

[12] Condemnee's counsel in the instant appeal, Michael F. Faherty, Esquire, also represented the condemnees in *Sunoco I*.

*Sunoco I*, 143 A.3d at 1017 (original bold emphasis omitted; bold emphasis added). Thus, the *Sunoco I* Court held that the trial court

> did not err when it concluded that 'PUC regulated intrastate shipments of NGL[s,]' including service provided by Mariner East 2, and that '[a]s a result, [**Sunoco**] **has the power of eminent domain to condemn property for the construction of** [**Mariner East 2**].' ([*Sunoco I* Trial Ct.] Op. at 4.)

*Id.* at 1017 (original bold emphasis omitted; bold emphasis added). The *Sunoco I* Court further held "that the record establishes that the expanded service to be provided by **the Mariner East 2 pipeline will involve both interstate service (subject to FERC regulation) and intrastate service (subject to** [**the**] **PUC**[**'s**] **regulation)** . . . . " *Id.* at 1015 (original bold emphasis omitted; bold emphasis added).

Because this Court's *Sunoco I* decision controls our analysis of this issue, we hold that the trial court here properly held that Mariner East 2 is both an intrastate and interstate pipeline dually regulated by the PUC and FERC.

**B. Public Utility**

Condemnee further argues that the trial court erred by finding that Sunoco is a public utility, since Mariner East 2 "is in interstate commerce and not for the public." Condemnee Br. at 8, 29. Because Condemnee failed to raise this issue in its Preliminary Objections, it is waived. *See In re Condemnation of Land for the S. E. Cent. Bus. Dist. Redevelopment Area #1*, 946 A.2d 1143 (Pa. Cmwlth. 2008).

Notwithstanding, the *Sunoco I* condemnees likewise argued before the Cumberland County Common Pleas Court that Sunoco failed to demonstrate a public need for the Mariner East 2 pipeline. Therein, the condemnees contended that the PUC's approval of a service is only a preliminary step, and it was the responsibility

10

of the trial court in an eminent domain proceeding to review the public need and to make a determination of the scope and validity of the condemnation for the Mariner East 2 pipeline. *Id.* at 1017.

> As to the PUC's jurisdiction, this Court in *Sunoco I* stated:

> [T[he Code charges [the] PUC with responsibility to determine which entities are public utilities and to regulate how public utilities provide public utility service. This has long been the statutory mandate. *See*, *e.g.*, *Pottsville Union Traction Co. v. P[a.] Pub[.] Serv[.] Comm'n*, 67 Pa. Super. 301 (1917). It is beyond purview that the General Assembly intended [the] PUC to have statewide jurisdiction over public utilities and to foreclose local public utility regulation. *Duquesne Light Co. v. Monroeville Borough*, 298 A.2d 252 (Pa. 1972).

*Sunoco I*, 143 A.3d at 1017. The *Sunoco I* Court further explained:

> The Eminent Domain Code does not permit common pleas to review the public need for a proposed service by a public utility that has been authorized by PUC through the issuance of a CPC. In *Fairview Water Co. v. Public Utility Comm[ission]*, . . . 502 A.2d 162 ([Pa.] 1985), our Supreme Court discussed the proper forum for a condemnee's challenge to the legality of a taking when a public utility attempts to condemn an easement and [the] PUC has determined that condemnee's property is necessary for the utility service. The case stemmed from a dispute between Fairview and a power company over the power company's continuing use of an easement previously agreed to by the parties. *Id.* at 163. The power company filed an application with [the] PUC requesting a finding and determination that its transmission line was necessary and proper for the service, accommodation, convenience, or safety of the public. A PUC Administrative Law Judge determined that the service was necessary and proper and also determined the scope and validity of the easement. This court affirmed. On appeal, Fairview argued that [the] PUC lacked jurisdiction to determine the scope and validity of the easement. *Id.* at 163-64. The Supreme Court agreed and stated: '[o]nce there has been a determination by the PUC that the proposed service is necessary and proper, the issues

11

of scope and validity and damages must be determined by a Court of Common Pleas exercising equity jurisdiction.' *Id.* at 167. As Sunoco here holds CPCs issued by [the] PUC and [the] PUC in its [o]rders issuing the CPCs found the authorized service to be necessary and proper, it is left to common pleas to evaluate scope and validity of the easement, but not the public need.

As illustrated by *Fairview*, determinations of public need for a proposed utility service are made by [the] PUC, not the courts. Section 1103 of the Code requires an applicant for a CPC to establish that the proposed service is 'necessary or proper for the service, accommodation, convenience, or safety of the public.' 66 Pa.C.S. § 1103(a). Under this section, the applicant must 'demonstrate a public need or demand for the proposed service . . . .' *Chester Water Auth. v. Pub*[.] *Util*[.] *Comm'n*, 868 A.2d 384, 386 ([Pa.] 2005) (emphasis added).[]

*Sunoco I*, 143 A.3d at 1018-19 (footnote and emphasis omitted).

Accordingly, based upon this Court's ruling on this precise issue in *Sunoco I*, we find no error in the trial court's conclusion in this case that

even if this objection were not waived, . . . the determination as to whether a particular service by a public utility will be in the public's interest is a determination to be made by the . . . PUC. In determining whether to grant CPCs, the PUC investigates and determines whether a company will be acting in the interest of the public. As to the public benefit of the Mariner East [P]roject, the PUC has ruled on multiple occasions that the project is in the public interest. *See, e.g.* Condemnor's Ex[.] 4 at 10; Condemnor's Ex[.] 6[] at 4.

Trial Ct. Op. at 13. Accordingly, the trial court's reasoning is consistent with *Sunoco I*, and it properly concluded that Sunoco is a public utility.

## C. Eminent Domain

Condemnee next argues that the trial court erred by finding that Sunoco has eminent domain powers for Mariner East 2 because its corporate resolution

authorized an interstate pipeline, and Sunoco seeks to condemn for two pipelines when it only asserts the need for one.[13] We disagree.

> As previously described, in the public utility context, an entity must meet separate but related requirements set forth in both the BCL and the Code to be a public utility corporation clothed with the power of eminent domain. Section 1511(a)(2) of the BCL provides that 'public utility corporations' may exercise the power of eminent domain to condemn property for the transportation of, *inter alia*, natural gas and petroleum products. Section 1103 of the BCL defines public utility corporation as '[a]ny domestic or foreign corporation for profit that . . . is subject to regulation as a public utility by the [PUC] . . . .' 15 Pa. C.S. § 1103. Section 1104 of the Code requires that a public utility must possess a CPC issued by [the] PUC pursuant to Section 1101 of the Code before exercising eminent domain. While courts of common pleas have jurisdiction to review whether an entity attempting to exercise eminent domain power meets the BCL criteria, that jurisdiction does not include the authority to revisit PUC adjudications. **A CPC issued by [the] PUC is prima facie evidence that [the] PUC has determined that there is a public need for the proposed service and that the holder is clothed with the eminent domain power**.

*Sunoco I*, 143 A.3d at 1017-18 (emphasis added).

Specific to the PUC orders issued regarding the Mariner East Project, the *Sunoco I* Court noted that the PUC's July 24, 2014 order found that intrastate pipeline service proposed by Sunoco would result in "numerous potential public benefits" by allowing Sunoco "to immediately address the need for uninterrupted deliveries of propane in Pennsylvania and to ensure that there is adequate pipeline capacity to meet peak demand for propane during the winter heating season." *Id.* at 1019. The Court further noted that in its August 21, 2014 order authorizing the provision of intrastate

---

[13] The *Sunoco I* condemnee made the same arguments to the trial court, but did not develop the corporate resolution argument on appeal to this Court. *See Sunoco I*, 143 A.3d at 1011; *see also id.* at 1014 n.16.

13

petroleum and refined petroleum products pipeline transportation service in Washington County, the PUC stated that:

> [W]e believe that approval of this Application is **necessary and proper for the service, accommodation, and convenience of the public**. We believe granting Sunoco authority to commence **intrastate transportation of propane** in Washington County will enhance delivery options for the transport **of natural gas and natural gas liquids in Pennsylvania**. In the wake of the propane shortage experienced in 2014, Sunoco's proposed service will increase the supply of propane in markets with a demand for these resources, including in Pennsylvania, **ensuring that Pennsylvania's citizens enjoy access to propane heating fuel**. Additionally, the proposed service will offer a safer and more economic transportation alternative for shippers to existing rail and trucking services.

*Id.*

The Court held that "there is no basis for a common pleas court to review a PUC determination of public need," and that "to allow such review would permit collateral attacks on PUC decisions and be contrary to Section 763 of the Judicial Code, 42 Pa. C.S. § 763, which places review of PUC decisions within the jurisdiction of this Court." *Id.* Accordingly, this Court concluded in *Sunoco I* that Sunoco holds a CPC issued by the PUC for Mariner East 2, it "is clothed with the eminent domain power." *Id.* at 1018.

> Relative to Sunoco's corporate resolution, the trial court ruled:
>
> [Section 1511(g)(2) of the BCL,] 15 Pa.C.S. [§] 1511(g)(2)[,] provides, in relevant part, that a petition for approval and order filing bond 'shall be accompanied by the bond and a certified copy of the resolution of condemnation. The resolution shall describe the nature and extent of the taking.' *Id.* We find that the Resolution[] to Condemn submitted by Sunoco satisfy the requirements of [Section] 1511 [of the BCL]. Contrary to Condemnee['s] Preliminary Objection, the Resolution[] do[es] not specify

14

that [it is] for an interstate pipeline, [r]ather, [it] state[s] that [it is] for the Mariner East 2 Project, which as noted above, we have found to be both an interstate and intrastate pipeline. The Resolution[] further specif[ies] that [it] cover[s] Lebanon County and specifically identif[ies] the subject [Property] and the extent of the easements sought on [the Property]. We therefore find that [the Resolution is] sufficiently specific to authorize the condemnation[] . . . .

Trial Ct. Op. at 8. Based upon our review of the record, we hold that the trial court properly determined that Sunoco's corporate resolution authorized the Property's condemnation. *See* R.R. at 887a-892a. Further, since "determinations of public need for a proposed utility service are made by [the] PUC, not the courts[,]" neither the trial court nor this Court may assess whether Sunoco, in fact, needs one or two pipelines for Mariner East 2.[14] *Sunoco I*, 143 A.3d at 1019. Accordingly, the trial court's reasoning, consistent with *Sunoco I,* properly concluded that Sunoco has eminent domain powers for Mariner East 2.

**D. Collateral Estoppel**

Lastly, Condemnee argues that the trial court erred by finding that the *Loper* decision denying Sunoco eminent domain power does not compel the same result in this case. We disagree.

> The doctrine of collateral estoppel bars relitigation of an issue where a question of law or fact essential to a judgment was actually litigated and determined by a court of competent jurisdiction. Collateral estoppel applies only when the issue decided in the prior case and the issue presented in the current case are identical; there was a final judgment on the merits; the issue was essential to the judgment; the party against whom estoppel is asserted had a full and fair chance to litigate the merits; and the party

---

[14] Since Condemnee expressly objected to Sunoco's need for two pipelines in Objection 5 (*see* R.R. at 925a), there is no merit to Sunoco's argument (*see* Sunoco Br. at 4) that the issue was waived.

15

> against whom estoppel is asserted was a party or in privity with a party in the prior case.

*Foster v. Colonial Assur. Co.*, 668 A.2d 174, 180-81 (Pa. Cmwlth. 1995) (citation omitted), *aff'd*, 673 A.2d 922 (Pa. 1996).

The condemnees in *Sunoco I* similarly argued that Sunoco's declarations of taking were barred by collateral estoppel based on *Loper*. At issue in *Loper* was whether Sunoco satisfied the definition of "public utility corporation" in the BCL, as a result of the regulation of its interstate service by FERC. However, at the time *Loper* was decided, Sunoco had not yet sought or obtained PUC approval to provide intrastate service. Thus, the *Loper* court addressed only whether Sunoco was a public utility corporation because it was subject to regulation as a public utility by an officer or agency of the United States, *i.e.*, FERC, and did *not* decide whether Sunoco was a public utility corporation because it was subject to regulation as a public utility by the PUC.

However, the *Sunoco I* Court found that, subsequent to the *Loper* decision and after the polar vortex in 2013-14, Sunoco repurposed Mariner East 2 to be both an *interstate* pipeline, as well as an *intrastate* pipeline subject to PUC regulation. Sunoco filed its declarations of taking in Cumberland County as a public utility corporation subject to regulation as a public utility by the PUC. As the question before the trial court and on appeal to this Court was whether Sunoco was subject to regulation as a public utility by the PUC because the Mariner East 2 pipeline was also an intrastate service, we concluded that the issue decided in *Loper* was not the same as in *Sunoco I*, and hence that collateral estoppel did not bar Sunoco's declarations of taking.

Here, as it did in *Sunoco I*, Sunoco presented evidence that, after *Loper* was decided, an intrastate component was added to the Mariner East Project in the form of on-ramps and off-ramps within Pennsylvania, thus, providing for the PUC's

16

regulation.  In finding that the *Loper* decision does not bar the instant case, the trial court reasoned:

> Relying upon *Loper* as the basis for the application of collateral estoppel in the instant case, Condemnee[] cannot meet [its] burden, as there have been subsequent, significant changes to the character of the Mariner East 2 Project in the two years since Judge Linebaugh's ruling.  At the time *Loper* was decided, the Mariner East 2 [P]roject was intended to be only an interstate pipeline, one which crossed Pennsylvania state lines but contained no stations for the on-loading and off-loading of transported materials within state lines.  Thus, ***Loper* only addressed whether Sunoco had condemnation authority under federal law for what was then a purely interstate pipeline**.  **Since that time**, in response to market conditions, **Sunoco has designated, with [the] PUC['s] approval, Mariner East 2 as both an intrastate as well as an interstate pipeline**.  N.T. at 69-70, 79, 104-105, 143.  Therefore, the facts of *Loper* are inapposite to those of the instant case[], and the decision cannot be the basis of Condemnee['s] assertion of collateral estoppel.

Trial Ct. Op. at 9-10 (emphasis added; footnote omitted).[15]  Based upon the PUC's approvals of Mariner East 2 as both an intrastate and interstate pipeline since *Loper*

---

[15] The *Sunoco I* Court similarly held:

> [The trial court] did not err in finding that collateral estoppel does not bar this action.  The issue decided in *Loper* is not the same issue raised in this case, and so it does not meet the first condition.  At issue in *Loper* was whether Sunoco satisfied the definition of public utility corporation as a result of the regulation of its interstate service by FERC and not as a result of PUC's regulation of its intrastate service.  **At the time *Loper* was decided, Sunoco had not yet sought or obtained [the] PUC['s] approval to provide intrastate service**. . . . The *Loper* court addressed only whether Sunoco was a public utility corporation because it was subject to regulation as a public utility by an officer or agency of the United States, i.e., FERC, and did not decide whether Sunoco was a public utility corporation because it was subject to regulation as a public utility by [the] PUC, the issue raised here.  Although [the c]ondemnees disagree that Sunoco can prevail on

17

was decided, we agree that the issues in the two cases are not identical and, thus, consistent with *Sunoco I*, the trial court properly concluded that collateral estoppel does not compel a different result.

### III. Conclusion

Because we discern no error in the trial court's determinations pertaining to the dual regulation of Sunoco's Mariner East 2 project by the PUC and FERC, Sunoco's status as a public utility, Sunoco's eminent domain powers and collateral estoppel, and these issues are directly controlled by this Court's *Sunoco I* decision with which the trial court's decision is in accord, we affirm the trial court's order overruling Condemnee's Preliminary Objections to Sunoco's Declaration.

_____
ANNE E. COVEY, Judge

---

this issue that is a separate inquiry from whether the issue was previously decided. For these reasons, we agree that collateral estoppel is not a bar to this case.

*Id.* at 1015 (emphasis added).

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by      :
Sunoco Pipeline L.P. of         :
Permanent and Temporary    :
Rights of Way for the           :
Transportation of Ethane,     :
Propane, Liquid Petroleum    :
Gas, and other Petroleum      :
Products in the Township of   :
Heidelberg, Lebanon County,  :
Pennsylvania, over the Lands  :
of Homes for America, Inc.    :
                                :
                                :   No. 565 C.D. 2016
Appeal of: Homes for America, Inc.  :

## O R D E R

AND NOW, this 24th day of May, 2017, the Lebanon County Common Pleas Court's March 24, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge

In Re:  Condemnation by Sunoco                :
Pipeline L.P. of Permanent and                :
Temporary Rights of Way for the               :
Transportation of Ethane, Propane,            :
Liquid Petroleum Gas, and Other               :
Petroleum Products in the Township            :
of Heidelberg, Lebanon County,                :
Pennsylvania, over the Lands of               :
Homes for America, Inc.                       :
                                              :   No. 565 C.D. 2016
Appeal of:  Homes for America, Inc.  :   Submitted:  September 30, 2016


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE                    FILED:  May 24, 2017


        For the reasons set forth in my dissent in *In Re: Condemnation by Sunoco Pipeline, L.P. (Gerhart Appeal)*, (Pa. Cmwlth. No. 220 C.D. 2016, filed May 15, 2017), I dissent here as well.


                            _____
                            JOSEPH M. COSGROVE, Judge